JAMES MAZZI vs. THE SMEDLEY COMPANY.

Third Judicial District, Bridgeport, October Term, 1920.
WHEELER, C. J., BEACH, GAGER, CASE and CURTIS, Js.

The plaintiff occasionally worked for the defendant, and between March 23d and May 19th, 1920, was employed by the defendant at different times, for an aggregate period of eight days, under a new contract for each day, for which he received $3.50 per day. On the last day, May 19th, he sustained a personal injury arising out of and in the course of his employment, and the question at issue was upon what basis his "average weekly wage" was to be computed under the provisions of General Statutes, § 5353, as amended by Chapter 142, § 8, of the Public Acts of 1919. *Held:—*

1. That inasmuch as the plaintiff's employment prior to the injury was "less than a net period of two calendar weeks," his weekly wage was to be considered as equivalent to the average weekly wage prevailing in the same employment in the same locality at the time of his injury, as prescribed by the statute; a wage which would be $21, as found in the present case.

2. That the only other method possible under the statute, based upon actual wages, would be manifestly unjust to the plaintiff, since that would give him a weekly wage of $3.50 only, and would rest upon two days' work—one day in each of two calendar weeks.

3. That the phrase "net period of two calendar weeks," meant two full weeks of six days each.

4. That the period of employment under the specific contract in force at the time of the injury governed, in determining whether actual, or customary, wages, should be taken as the basis for awarding compensation.

Submitted on briefs October 29th, 1920—decided January 6th, 1921.

RESERVATION for the advice of this court, by the Superior Court in New Haven County, *Webb, J.*, of a finding and *pro forma* award by the Compensation Commissioner of the third district. *Case remanded for an award in favor of the plaintiff.*

The plaintiff is a barber and conducts a barber shop. In order to earn extra money he, on various occasions, worked for the defendant, going to the office of the latter in the morning of each day and asking for work, and being given work for that particular day, and at the end of the working day receiving his pay, $3.50 for the day. Each day's employment constituted an independent contract. In this employment the plaintiff worked for the defendant in 1920, on Tuesday, March 23d, Wednesday, March 24th, Thursday, March 25th, and Friday, March 26th, Thursday, April 8th, Wednesday, May 5th, Tuesday, May 18th, and Wednesday, May 19th. He received $3.50 for each day's work. In this employment the week began on Monday morning. The average weekly wage prevailing in the community in the employment in which the plaintiff was engaged at the time of his injury, was $21 per week. On May 18th there was some talk between the plaintiff and the defendant as to an arrangement for regular work on four days of each week, but no contract was entered into and the plaintiff continued to work without a contract other than the agreement made at the beginning of each day, that he should work for that day.

The commissioner held that this case involved doubtful questions of law, which he stated as follows: "(First). If, after excluding the broken week at the beginning of the period of employment and the week of the injury, there remain only two days of work under an employment calling for work on four days a week, and said two days are separated by a period of several weeks, is the case governed by the statutory rule prescribing the

method of computing the actual average wage, or that prescribing the method of computing the average wage prevailing in the same employment; and how, in detail, is the wage to be figured under whichever rule may be applicable? (Second). Whether, when there are several contracts of employment between the employer and the employee within the time fixed by statute for the determination of the average weekly wage, the period of employment, the wages of which are to be counted and the length of which is to be considered in determining whether actual or customary wages are to be taken, is the period of employment under the specific contract in force at the moment of the injury, or the whole time of employment under all of the contracts?"

*Anthony P. Adinolfi*, for the plaintiff.

*DeLancey S. Pelgrift*, for the defendant.

GAGER, J.   This case comes up as a reservation upon a *pro forma* award pursuant to the provisions of § 5383 of the General Statutes as amended by § 16 of Chapter 142 of the Public Acts of 1919.   The decision of the questions raised depends upon the construction to be given to § 5353 of the General Statutes as amended by § 8 of Chapter 142 of the Acts of 1919.   As a verbal scrutiny of this Act is requisite, we quote in full so much of the Act as applies, as follows: "For the purposes of said chapter, the average weekly wage shall be ascertained by dividing the total wages received by the injured workman from the employer in whose service he is injured during the twenty-six calendar weeks immediately preceding that during which he was injured, by the number of said calendar weeks during which, or any portion of which, said workman was actually employed by said employer, provided, in making such

computation, absence for seven consecutive calendar days, although not in the same calendar week, shall be considered as absence for a calendar week. When the employment commenced other than at the beginning of a calendar week, such calendar week and the wages earned during such week shall be excluded in making the above computation. When the employment, previous to injury as provided above, is computed to be less than a net period of two calendar weeks, then his weekly wage shall be considered to be equivalent to the average weekly wage prevailing in the same or similar employment in the same locality at the time of injury."

The first question is whether this is a case for the application of the rule with reference to the actual average weekly wage of the plaintiff, or of the average weekly wage prevailing in the employment, and is framed on the assumption that the statutory method of computation requires taking into account all the days of work performed by the plaintiff for the employer within the period of twenty-six weeks. This was the method actually adopted by the commissioner.

We note here, that in the statement of the question there is included, as one of the conditions: "under an employment calling for work on four days a week." No such situation is stated in the finding, and we ignore it as manifestly a clerical error. Four days was talked about as a possible term of employment, but it is expressly found that nothing came of it.

To determine this question under the assumption stated above, it is first necessary to undertake the computation of the actual average weekly wage. Our statute assumes twenty-six calendar weeks prior to the week of the accident, as the basic period for determining the actual average wages. The plaintiff worked for the defendant for eight days in all, each

day's employment constituting an independent contract. The first calendar week of employment began on Monday, March 22d. The first day's work was Tuesday, March 23d, and the plaintiff worked four days in that week. These four days are to be excluded from the computation under the language of the statute, which reads: "When the employment commenced other than at the beginning of a calendar week, such calendar week and the wages earned during such week shall be excluded in making the above computation." The last two days of work were May 18th and 19th. These were in the same week in which the accident happened, and are excluded from the computation, because the twenty-six weeks are those "immediately preceding that during which he was injured." We have left two days' work, April 8th and May 5th, a day in each of two separate calendar weeks, as the only days of which account can be taken in ascertaining the plaintiff's average weekly wage. The plaintiff's daily wage was $3.50, or $7 earned in two separate calendar weeks. Dividing this total wage by two, "the number of said calendar weeks during which, or any portion of which, said workman was actually employed by said employer," we get the actual average weekly wage as $3.50. This is the same as the computation made by the commissioner, and was strictly within the language of the statute, assuming, as stated above, that all days of work are to be considered.

After the statute prescribes the method of ascertaining the actual average weekly wage, which happens in this case to be the same as the daily wage, the following provision occurs: "When the employment, previous to injury as provided above, is computed to be less than a net period of two calendar weeks, then his weekly wage shall be considered to be equivalent to the average weekly wage prevailing in the same or similar em-

ployment in the same locality at the time of the injury."
The finding shows the average weekly wage in the
employment to have been $21. The question is, there-
fore, reduced to this: what is here meant by the phrase
"employment . . . less than a net period of two cal-
endar weeks"? Apparently the commissioner solved
the question by treating the period of twenty-six weeks
as the gross time which might be taken account of in
determining the weekly wage, and treating the weeks
which should be actually used in determining the di-
visor, that is, all weeks in the twenty-six left after mak-
ing the exclusions, as a net period. This would make
all calendar weeks during which any work was done
that could be counted, net weeks. This results, as ap-
plied to this case, in holding that one day's work in
each of two calendar weeks constitutes employment for
a net period of two calendar weeks, from which it fol-
lows that the right to invoke a compensation based
upon the average weekly wage prevailing in the same
or similar employments, is limited to claimants whose
only work has been done in but one calendar week,
which could have been counted in determining the
actual weekly wage, or in the same calendar week in
which the accident happened.

We do not think this is a reasonable construction of
the statute, and that it involves a manifest injustice
which it is not to be presumed that the statute in-
tended. Work for one day or more in a single calendar
week secures the result of a compensation based upon
the average weekly wage in the employment, while
work by a claimant one day a week for two weeks,
as in this case, limits him to a weekly wage identical
with and no more than a single day's wage. Of course,
the method of fixing the dividing line when compensa-
tion ceases to be based on the actual weekly average
of wages and is to be based on the prevailing weekly

average, if such a distinction is to be made, must be more or less arbitrary. But the statute appears to be designed to require some substantial quantity of labor to be performed within the limited period, to establish a basis for determining a claimant's average weekly wage, and therefore requires that the claimant shall have been employed for at least a "net period of two calendar weeks," by which we think is meant exactly what will first occur to the reader, two full weeks of work out of a total of twenty-six possible weeks. The use of "calendar," here refers to the quantity of time and not the almanac period. "Net" means "not subject to any discount or deduction." Standard Dictionary. And a net period of time, as of a week, is a whole week. The term "calendar week," as used in determining the divisor for obtaining the average weekly wage, is described by the statute as meaning any calendar week "during which, or any portion of which, said workman was actually employed." Again, it is provided that "absence for seven consecutive calendar days, although not in the same calendar week, shall be considered as absence for a calendar week." Just what a "calendar day" is, as differing from any other sort of a day, we are unable to comprehend, but it is clear that the term "calendar" is loosely used in the statute, sometimes in the technical sense and sometimes as meaning a period of seven days, though not all in one strictly calendar week. The phrase under examination clearly relates to the duration of employment. Labor for a portion of a calendar week cannot be labor for a net calendar week. "Calendar," as used in the phrase in question, must be intended to indicate a full week, and "net" can have no meaning as here used unless it means that the sum total of day's labor as ascertained in computing the average weekly wage shall be the equivalent of two full calendar weeks. That

is, the computation of the labor must bring about the result of two full weeks, in the same way that absences to be counted must be consecutive and in number equal to the number of days in the calendar week. Employment for a "net period," means for the whole of the period taken as the unit. That is, that period without deduction or diminution; and here means for a number of days equivalent to two calendar weeks. Even this period of time, as we have noted, is arbitrary, but the construction we give is, we think, required by the language and purpose of the Act, and does not lead to such serious injustice as that adopted by the commissioner. Further, as applied to labor, the number of days in a calendar week must necessarily mean six, the number of days during which labor is lawful under our Sunday laws, for there is nothing in the finding to show that this case comes within any of the exceptions. Neither is there anything in the case which involves considering any custom of the business making less than six days the standard week's work.

We have hitherto discussed this section of the statute upon the same assumption that was made by the commissioner, that he was to take account of all the days' work done by the plaintiff for the defendant. As will appear from the answer to the second question reserved, we think the commissioner was in error in making this assumption.

The reservation next raises the question whether, where the claimant has worked under different contracts for the same employer during the period of twenty-six weeks, the period of employment the wages of which are to be counted and the length of which is to be considered in determining whether actual or customary wages are to be taken, is the period of employment under the specific contract in force at the moment of the injury, or the whole time of employ-

ment under all of the contracts, this latter having in fact been the method used by the commissioner. This question is also to be decided from the provisions of amended § 5353 as set out above.

The ascertainment of actual average weekly wage of the plaintiff, is based upon the hypothesis of wages from the "employer in whose service he is injured during the twenty-six calendar weeks" immediately preceding that during which he was injured. The service here referred to, is the one making the contract for service, and necessarily implies continuity of contract. The wage to be taken must arise under the same contract in force at the time of the injury. The "actually employed," just below, clearly means actually at work under the contract in force when the accident happens. The provision as to "absence for seven consecutive calendar days" also necessarily implies the idea of continuity of contract, for it clearly carries the idea of not being where he might be expected to be found, which could only be true if there were a contract in existence calling for, or at least permitting, the workman's presence for the doing of work. Again, the phrase, "when the employment commenced other than at the beginning of a calendar week," means when the performance of work under the contract commenced on some other day than Monday, and implies a continuance of work, that is, of the employment down to the day of the injury. So when the statute speaks of the employment previous to the injury as computed at less than two weeks, this must mean quantity of time of work under the contract in force at the day of the injury. The finding is very explicit that the total of eight days' work was performed under eight different contracts of service for a day at a time. The legal relationship is no different, so far as the application of this statute is concerned, from what it would have been

had these contracts been with eight different men. The only contract which can be recognized in applying this statute, is that entered into for the 19th day of May, the day of the injury. The contracts for the prior days had expired with the end of the day. It is exactly as though the plaintiff worked for the defendant for the first time on the 19th, and happened to be injured on the first day of his employment. This view of the plaintiff's position brings him in the class of those whose compensation is based upon the prevailing average weekly wage as described in the statute.

The idea in the mind of the framer of the statute seems to have been that the most frequent case was that of indefinitely continuous service, and that twenty-six weeks was a reasonable time for ascertaining the average weekly wage. The statute does not, like some, refer to the entire earnings during the given period, but only the earnings from the employer in whose service the workman is injured. And this method, as we have seen, requires at least two full weeks' work for its application. All other cases come within the prevailing average weekly wage. Whatever possible failure of exact justice may arise from the application of our definite, inelastic rule, it certainly does not work to the disadvantage of the occasional or floating workman.

We therefore answer the first question reserved, that upon the assumption of one contract covering the whole period, the case calls for the average wage prevailing in the same employment as the basis for compensation.

We answer the second question, that the period of employment under the specific contract in force at the time of the injury governs in determining whether actual or customary wages are to be taken, that in the case reserved this was the contract for May 19th, and that

the basis of compensation is the average wage previously in the same employment.

The Superior Court is advised to sustain the appeal from the commissioner and to remand the case to him with direction to make an award in favor of the plaintiff in accordance with this opinion.

In this opinion the other judges concurred.