JOHN BABA *vs.* THE EASTERN MALLEABLE IRON
COMPANY.

First Judicial District, Hartford, March Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

General Statutes, § 5353, contemplates that the normal basis of com-
pensation for an injured workman shall be his "average weekly
wage"; and that "the average weekly wage prevailing in the same
or similar employment in the same locality at the time of the
injury," shall apply only to the exceptional cases in which the
employment prior to the injury is less than a "net period of two
calendar weeks"; and therefore if the total net work'ng employment
of the workman, within the prescribed period of twenty-six weeks,
equals or exceeds the equivalent of two full week's work—as in
the present case—, his average weekly wage, and not the prevailing
wage, affords the statutory basis for compensation.

Argued March 7th—decided April 18th, 1923.

APPEAL by the defendant from a *pro forma* finding
and award of the Compensation Commissioner of the
first district, taken to and reserved by the Superior
Court in Hartford County, *Hinman, J.,* upon the
Commissioner's finding, for the advice of this court.
*Superior Court advised to set aside the award and remand
the cause to the Commissioner for further proceedings.*

The finding of the Commissioner establishes the
following facts: The plaintiff, John Baba, had been
employed by the defendant for eleven weeks, when, on
February 13th, 1922, he sustained an injury arising
out of and in the course of his employment, consisting
of a compound fracture of the left arm, and became en-
titled to compensation for temporary total disability.

Medical, surgical and hospital services have been
furnished to the plaintiff by the defendant. Due to
slack work and industrial depression, the plaintiff,
although his employment was under a single contract,

worked during his eleven weeks employment but one hundred and sixty-six and three quarter hours. He worked some part of each of the eleven weeks, but did not work more than five days in any one week. His weekly wage varied from a maximum of $7.20 to a minimum of $1.29. His total wage for the entire period was $47.99, and his "average weekly earnings," computed according to the mathematical formula prescribed in the first two sentences of § 5353, which is printed in the foot-note, were at the rate of $4.36 per week. The full, normal and regular industrial week in New Britain was fifty-five hours, but most factories, during the period in question, were on short time.

On these facts the Commissioner ruled, *pro forma,* that the plaintiff's employment, computed according to the statute, was "less than a net period of two calendar weeks," and that his weekly wage should "be considered to be equivalent to the average weekly wage prevailing in the same or similar employment" in New Britain at the time of the injury; which was found by him to be $15.13 for full time work, and awarded compensation on that basis.

General Statutes, § 5353. AVERAGE WEEKLY EARNINGS. For the purposes of said chapter, the average weekly wage shall be ascertained by dividing the total wages received by the injured workman from the employer in whose service he is injured during the twenty-six calendar weeks immediately preceding that during which he was injured, by the number of said calendar weeks during which, or any portion of which, said workman was actually employed by said employer, provided, in making such computation, absence for seven consecutive calendar days, although not in the same calendar week, shall be considered as absence for a calendar week. When the employment commenced other than at the beginning of a calendar week, such calendar week and the wages earned during such week shall be excluded in making the above computation. When the employment, previous to injury as provided above, is computed to be less than a net period of two calendar weeks, then his weekly wage shall be considered to be equivalent to the average weekly wage prevailing in the same or similar employment in the same locality at the time of injury. . . .

The questions reserved for our advice are as follows: "1. In case of a workman on short time, who during the twenty-six week period next preceding the week of his injury has not worked full time during any two full calendar weeks of seven days or six days or during any two full ordinary industrial weeks because of shortage of work due to industrial depression, but who has worked short time on several days each week, as set forth in paragraph 9 of the finding above, and all of whose work during said period has been under a single contract of employment, should the average weekly earnings be determined by the arithmetical formula prescribed in the first two sentences of § 5353, or by the rule of prevailing wage prescribed in the third sentence of said section? 2. Did the Commissioner err in finding, as set forth in paragraph 19 of the finding, as amended by paragraph 6 of the ruling on motion to correct finding, 'that under § 5353 of the General Statutes the claimant's employment was less than a net period of two calendar weeks,' because said conclusion is contrary to 'the facts set forth in the preceding paragraphs' of the finding upon which said conclusion is expressly based? 3. Did the Commissioner err in ruling *pro forma,* as set forth in paragraph 19 of the finding and award dated August 2, 1922, as amended by paragraph 6 of the ruling on motion to correct finding dated Nov. 14, 1922, 'that the average weekly earnings upon which compensation should be based were $15.13,' because the same is contrary to 'the facts as set forth in the preceding paragraphs' of the finding upon which said conclusion is expressly stated to be based? 4. Did the Commissioner err in awarding the claimant compensation at the rate of $13.75 per week, because inconsistent with the facts set forth in the finding as amended, and particularly as inconsistent with the facts as set forth in paragraph 9

of the finding and award dated August 2, 1922, as amended by paragraphs 1 and 2 of the ruling on motion to correct finding dated Nov. 14, 1922?''

We note that the figures $13.75 in question four, are wrong. The award was at the rate of $7.57, being one half of $15.13, the average weekly prevailing wage as found.

*Ralph O. Wells,* for the defendant.

*Frederick B. Hungerford,* for the plaintiff.

BEACH, J. The questions reserved turn on the construction of § 5353 of the General Statutes, which we have recently passed on in *Mazzi* v. *Smedley Co.,* 95 Conn. 607, 112 Atl. 168. In that case the plaintiff worked for the defendant for eight days in all. Of these eight days, four were excluded from the statutory computation because they fell within the first week of the employment, which happened not to commence at the beginning of a calendar week; and two other days were excluded because they fell within the week in which the injury happened. Consequently, as is said on p. 611, ''we have left two days' work, April 8th and May 5th, a day in each of two separate calendar weeks, as the only days of which account can be taken in ascertaining the plaintiff's average weekly wage.'' We held, of course, that two days was ''less than a net period of two calendar weeks,'' and that under the statute the plaintiff was entitled to have his wages considered equivalent to the prevailing average weekly wage; and, in addition, we held that as there was an independent contract of employment for each day's work, the situation was the same as though the plaintiff worked for the defendant for the first time on the day of his injury. Concerning the phrase, ''is computed

to be less than a net period of two calendar weeks,"
we said: "Of course, the method of fixing the dividing
line when compensation ceases to be based on the ac-
tual weekly average of wages and is to be based on the
prevailing weekly average, if such a distinction is to be
made, must be more or less arbitrary. But the statute
appears to be designed to require some substantial
quantity of labor to be performed within the limited
period, to establish a basis for determining a claimant's
average weekly wage, and therefore requires that the
claimant shall have been employed for at least a 'net
period of two calendar weeks,' by which we think is
meant exactly what will first occur to the reader, two
full weeks of work out of a total of twenty-six possible
weeks. The use of 'calendar,' here refers to the quan-
tity of time and not the almanac period. 'Net' means
'not subject to any discount or reduction.' Standard
Dictionary. And a net period of time, as of a week, is
a whole week. The term 'calendar week,' as used in
determining the divisor for obtaining the average
weekly wage, is described by the statute as meaning any
calendar week ' during which, or any portion of which,
said workman was actually employed.' Again, it is
provided that ' absence for seven consecutive calendar
days, although not in the same calendar week, shall be
considered as absence for a calendar week.' Just what
a 'calendar day ' is, as differing from any other sort of a
day, we are unable to comprehend, but it is clear that
the term 'calendar ' is loosely used in the statute,
sometimes in the technical sense and sometimes as
meaning a period of seven days, though not all in one
strictly calendar week. The phrase under examination
clearly relates to the duration of employment. Labor
for a portion of a calendar week cannot be labor for a
net calendar week. 'Calendar,' as used in the phrase in
question, must be intended to indicate a full week, and

'net' can have no meaning as here used unless it means that the sum total of day's labor as ascertained in computing the average weekly wage shall be the equivalent of two full calendar weeks.''

In the present case, the sum total of the plaintiff's day's labor, excluding the initial week of his employment, and the week during which the injury was received, amounted to more than ''the equivalent of two full calendar weeks,'' and under the rule laid down in the *Mazzi* case, the plaintiff's average weekly wage is to be computed in the manner prescribed in the first two sentences of § 5353. The rule adopted by the Commissioner goes far beyond the *Mazzi* case, for he holds that the employment is ''less than a net period of two calendar weeks'' in every case where the claimant has not at some time during the period of his employment worked continuously from the beginning to the end of two full weeks of five and one half days each. On that theory, the claimant might have worked five days a week for twenty-six weeks, and still be entitled to receive, or be compelled to accept, compensation based on the local prevailing wage for the same or similar employment, instead of on the basis of his average weekly wage. This is contrary to the letter and spirit of the statute, which plainly intends that compensation shall be based on the claimant's average weekly wage, computed in the prescribed manner, unless in the exceptional cases where the ''net period'' of the employment is less than two calendar weeks; meaning, as we said in the *Mazzi* case, that the total employment in the net period of employment is less than the ''equivalent'' of two full weeks.

The statute contemplates that the average weekly wage shall be the normal basis of compensation, but the Commissioner's ruling would make the prevailing wage the normal, rather than the exceptional, basis of com-

pensation. We are satisfied that the *Mazzi* case furnishes the correct working rule for ascertaining the net period of employment: that in case the total net working employment of the claimant within the prescribed period, equals or exceeds the equivalent of two full weeks work, his average weekly wage affords the statutory basis for compensation.

The Superior Court is advised to set aside the award and remand the case to the Commissioner for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.