VAIVIDA *v.* CITY OF GRAND RAPIDS.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT.
   Workmen's compensation act was originally bottomed on idea that industry should assume liability as part of cost of production.

2. SAME—CONTRACT RELATION OF MASTER AND SERVANT ESSENTIAL.
   In order to render workmen's compensation act applicable, contract relation of employer and employee must exist between parties.

3. PAUPERS—PERSONS RECEIVING AID SET TO WORK NOT EMPLOYEES.
   Citizens needing public aid are in sense wards of municipality required to support them, and, if those able are set at work at common and unremunerative public tasks, there does not arise contract of hire or relation of employer and employee, but only helping hand in behalf of public charity invoked and extended (2 Comp. Laws 1929, § 8229).

4. SAME—MUNICIPALITY SUPPORTING PAUPERS HAS RIGHT TO THEIR SERVICES.
   Municipalities called upon to support paupers have right to their services and earnings to aid in their support, and said right does not arise out of contract, but as counterpart of statutory duty to care for poor persons (2 Comp. Laws 1929, § 8229).

5. MASTER   AND   SERVANT—WORKMEN'S   COMPENSATION   ACT—
    PAUPERS.

    Citizen working for city and receiving for his labor scrip which
    could be exchanged for goods at city's store under city's
    relief plan was not employee of city within meaning of
    workmen's compensation act, and therefore is not entitled
    to compensation for injuries received while so working.

    McDONALD, C. J., and POTTER and FEAD, JJ., dissenting.

Appeal from Department of Labor and Industry.
Submitted April 11, 1933. (Docket No. 85, Calendar No. 37,067.) Decided August 29, 1933.

August Vaivida presented his claim against City
of Grand Rapids, a municipal corporation, for accidental injury sustained while in the alleged employment of defendant. Award to plaintiff. Defendant
appeals. Reversed.

*Dale Souter* and *Charles J. Zamiara,* for appellant.

FEAD, J. (*dissenting*). Plaintiff, while working for
the city of Grand Rapids, was injured, and has been
awarded workmen's compensation. The city reviews
the award. Plaintiff is not represented by counsel.
The question is whether plaintiff was an employee
of the city, within 2 Comp. Laws 1929, § 8413:

"Every person in the service of the State, or of
any county, city, township, incorporated village, or
school district therein, under any appointment, or
contract of hire, express or implied, oral or written,
except any official of the State, or of any county,
city, township, incorporated village, or school district therein, elected at the polls."

Defendant contends plaintiff was not an employee
but was a destitute person receiving aid from the
city, under 2 Comp. Laws 1929, § 8229:

"That every poor person, who shall not be relieved or maintained by his relatives as provided in this act, shall be relieved and maintained by the county, in which he has gained a legal settlement, except as hereinafter provided in the case of counties in which the distinction between township, city, and county poor shall not be abolished, in which case, he shall, in such counties, be relieved and maintained by the city or township in which he has a legal settlement."

Defendant argues that plaintiff's work for the city was merely an incident in its administration of poor relief under the statute, and he was not an employee.

Plaintiff began to receive aid from defendant in May, 1930. His right to help and the amount of relief were determined by city investigators. He performed no labor for the city in return for what he received. In October, 1930, however, defendant instituted the scrip relief plan, under which persons receiving aid were "required" to work if they were able. They received scrip which they could exchange for goods at the city store. The rate of scrip pay was 40 cents per hour. The city determined the number of hours work per week on the basis of the needs of the applicant and his family, not on the value of the labor to the city. Plaintiff worked four hours per day at the weekly scrip pay of $9.60 until October 22, 1931, when he was changed to three hours per day at $7.20 per week. He was injured June 22, 1932, while working with a wheelbarrow in a city park.

The record is scanty, but we accept counsel's statement that the scrip relief plan was instituted with two objects, (1) to forestall and prevent unrest and possible disturbances engendered by the forced idleness of many men, and (2) to enable needy citi-

zens to preserve their self-respect by returning services for public aid. We also accept the assertion that jobs were "made" to provide work for as many persons as possible, and that many of the jobs were unnecessary and trivial. Of course, it must also be true that much or all of the work had some benefit to the city, utilitarian or æsthetic, although on a business basis the labor might have been deemed overpaid.

The purpose of the scrip plan of relief is laudable, and its social effect undoubtedly good, but the relationship created between the parties in its execution is governed by what they did and not by why they did it. An employer remains an employer although he runs his mill at a loss and for the purely humanitarian purpose of giving his workmen a living. Moreover, it is an open question whether the social features of the scrip plan are not better served by holding the relation to be that of employer and employee.

The question before us is a new one. The authorities disclose no similar cases and they are of help only by way of suggestion.

In this State the right of a private charitable society to exact services in return for benefits, without establishing the relation of employer and employee, was held in *Blust* v. *Sisters of Mercy,* 256 Mich. 1, in the case of a novitiate on probation to become a Sister of Mercy, on the ground that the relation was purely charitable and involved no hiring or commercialism.

Upon somewhat analogous grounds, an eagle boy scout was held not an employee, who worked in preparing a boy scout camp for regular visitors and was relieved of expense while attending camp. *Stiles* v. *Des Moines Council, Boy Scouts,* 209 Iowa, 1235 (229 N. W. 841).

The British cases hold the immunity for charitable reasons within close bounds. In *Burns* v. *Manchester and Salford Wesleyan Mission* (Ct. of App.), 99 L. T. 579 (1 B. W. C. C. 305), a person, working in a labor yard maintained by a purely charitable organization and who received board, lodging, and occasional trifling sums of money, was held not an employee. However, in *Porton* v. *Central (Unemployed) Body for London* (Ct. of App.), 78 L. J. K. B. 139 ([1909] 1 K. B. 173, 100 L. T. 102, 73 J. P. 43, 25 T. L. R. 102, 2 B. W. C. C. 296), where the defendant was a corporation created by statute to provide work for the unemployed and which furnished temporary work at stated wages, the court deemed the aid neither charitable nor poor relief and, as it was wholly voluntary on both sides, held that the relation was one of employer and employee. And in *MacGillivray* v. *Northern Counties Institute for the Blind* (Scot. Ct. of Sess.), (1911) S. C. 897 (4 B. W. C. C. 429), where plaintiff worked in the industrial department of defendant, the department being maintained partly by charitable contributions, and received lodging, board, and five shillings in money per month, the court, in holding him an employee, stressed the voluntary character of the relationship, that he was not bound to go to the institute nor it to receive him.

The above cases involved private employees as defined in the workmen's compensation acts. The definition of a public employee is even broader, because it includes one under "appointment" as well as "contract" of hire. The courts have recognized the breadth of the definition and have not undertaken to restrict it. The following persons have been held public employees:

A taxpayer, who had the option, by law, to pay his road tax or perform labor and who elected to

work it out (*Town of Germantown* v. *Industrial Commission,* 178 Wis. 642 [190 N. W. 448, 31 A. L. R. 1284]); a juror (*Industrial Commission* v. *Rogers,* 122 Ohio St. 134 [171 N. E. 35, 70 A. L. R. 1244]); a bystander, summoned by a sheriff to assist in making an arrest (*County of Monterey* v. *Industrial Accident Commission,* 199 Cal. 221 [248 Pac. 912, 47 A. L. R. 359]); a convict, working on the highway and receiving compensation, where it was optional with prisoners whether they would accept the labor or not (*California Highway Commission* v. *Industrial Accident Commission,* 200 Cal. 44 [251 Pac. 808, 49 A. L. R. 1377]). In the latter case the court noticed the social features of the privilege with reference to the rehabilitation of prisoners.

In connection with public poor relief, there are two cases which have not reached the courts. In *City of Columbus* v. *Greenlee,* Industrial Commission of Ohio, June 5, 1932, a man, working for the city under the scrip relief plan, was held not an employee. However, the laws of Ohio require an indigent to render services for the relief furnished him. In *Bennett* v. *City of Detroit,* Michigan department of labor and industry, June 15, 1931, the plaintiff who had received aid from the city and worked to pay for it was held an employee.

Private charities make their own rules. Public poor relief is governed by law, to which we must turn to discover whether plaintiff's services to the city were within the administration of relief of destitute persons or arose out of another relationship.

The liability of the public for the support of poor persons did not exist at common law. It rests entirely on statute. 48 C. J. p. 432. The city of Grand Rapids had the duty to support plaintiff. *Eckman* v. *Township of Brady,* 81 Mich. 70. Except as to inmates of a county infirmary (2 Comp. Laws

1929, § 8233), we can find no statute which confers authority on a municipality to require labor as a condition to poor relief nor to compel a person obtaining aid to work. Any penalty the city might have imposed on plaintiff had he refused to work as "required" would have been extra-legal as far as the poor law is concerned. On the other hand, the city had no duty to provide work for plaintiff. It could have supported him in idleness. The net result is that both parties were free to contract for the employment.

The establishment of the scrip relief plan was voluntary on the part of the city. It was neither required nor authorized by statute as a means of providing poor relief. Consequently it must have been instituted by virtue of the general powers of the city, not in furtherance of special duties or powers. Engagement in the plan by plaintiff was equally voluntary, because he had the option to accept or reject it without loss of legal rights.

In having full control of and dictating the rate of wages, the hours of labor, and the conditions of employment, the city was in no different position than any other employer who can make his own terms, nor plaintiff than any other employee who accepts the terms offered.

It appears plain that the scrip relief plan was not an incident to the administration of statutory support of the poor, but was a substitute for it. The employment of plaintiff by defendant was contractual, not statutory, and no other relationship between them can be found from the situation except that of employer and employee.

Award should be affirmed, without costs.

McDonald, C. J., and Potter, J., concurred with Fead, J.

WIEST, J.   I am not in accord with the opinion of Mr. Justice FEAD.

The workmen's compensation act (2 Comp. Laws 1929, § 8407 *et seq.*) has no common-law background and was originally bottomed on the idea that industry should assume liability as a part of the cost of production.   It is true that the plan has been extended to encompass labor contracts in other fields, but, at first, and now, the relation must be one of contract and that of employer and employee.

Citizens needing public aid are in a sense wards of the municipality required to support them, and, if the able among them are set at work at common and unremunerative public tasks, there does not arise a contract of hire or the relation of employer and employee, but only a helping hand in behalf of public charity invoked and extended.

"Municipalities called upon to support paupers have a right to their services and earnings to aid in their support."   48 C. J. p. 543.

This right does not arise out of contract at all, but as a counterpart of the statutory duty to care for poor persons.   Such persons are not in the employ of the municipality under the relation of master and servant, for such relation is neither contemplated nor does it in fact arise.

I am not prepared to hold that, where the statute requires a municipality to maintain the poor, the relation of master and servant under contract arises if the poor dependents are not left in idleness.

I think the award should be vacated.

The question being of public moment, there will be no costs.

CLARK, SHARPE, NORTH, and BUTZEL, JJ., concurred with WIEST, J.