Hattler, Appellant et al. *v.* Wayne County.

Argued March 6, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*A. G. Rutherford,* with him *Ira B. Rutherford* and *James Rutherford,* for appellant.

*Paul G. Collins,* and with him *J. Wilson Ames,* for appellee.

OPINION BY PARKER, J., April 22, 1935:

This is a workmen's compensation case and arose out of a claim by Elizabeth Hattler, a dependent mother, by reason of the death of her son as the result of injuries received while he was alleged to be in the employ of the County of Wayne. The referee and board awarded compensation and, on appeal to common pleas, the award was reversed, when claimant appealed to this court.

Eugene Hattler was assigned by the Emergency Relief Board of Wayne County, acting under the provisions of the "Talbot Act" (Act of August 19, 1932, P. L. Sp. Sess. 90), to work on a county road under the direction of the county commissioners of Wayne County. The assignment was made at the request of the commissioners, and a truck was provided by the county at its expense to transport Hattler and others to the road where the work was to be performed. On May 15, 1933, Hattler was being driven, with others, to the place of work when he was thrown from the truck and received injuries from which he died three days later.

The important and only serious question raised on this appeal is as to the liability of the county for compensation to a work relief employee. It will be noted that the accident occurred about two weeks prior to

the effective date of the Amendment of June 3, 1933,
P. L. 1515, to the Workmen's Compensation Law,
which amendment specifically places the responsibility
for compensation on the "public or charitable body,
corporation or institution" employing any work relief
employee. It is clear that if Eugene Hattler can be
classed as an employee within the meaning of the
Workmen's Compensation Act while engaged in work
on the county roads under the circumstances detailed,
"the right to compensation is fixed by the beginning
of the journey to such point, or the ending of it upon
return," since the county undertook as a part of the
consideration to furnish transportation to the place
of work: Campagna v. Ziskind, 287 Pa. 403, 410, 135
A. 124.

A correct solution of the problem involved neces-
sarily depends upon a determination of the exact re-
lationship which arose between Eugene Hattler on
the one hand and either the state or the County of
Wayne on the other hand when the advantages of the
"Talbot Act" were made available to Hattler and he
began his work. A reading of that act discloses a
clear intent upon the part of the legislature to deal
with unemployment rather than with the care of in-
digents as that term has been used in our poor laws.
It is true that the act provides in part for direct re-
lief, but the primary idea is to furnish employment.
At the outset it recognizes the threat to the "public
health, safety, morals, and welfare by existing con-
ditions of unemployment," and then appropriates a
large sum of money for direct relief and work relief.
The money allotted is made available for construction
and improvement of highways and bridges, and it is
finally provided that any money available above the
sum set aside for work relief "shall be available for
the purchase of food, clothing, fuel, and shelter for

the unemployed." The primary purpose would seem to be the providing of employment.

In any event, it was in work relief that decedent was engaged when he was injured. He embarked on the undertaking under an arrangement with the Emergency Relief Board at the request of the county that he should perform service on a county road and receive a "food order" for five dollars as compensation for twenty hours of labor when it was performed. The relationship between some branch of the state and Hattler was that of employer and employee as those terms are ordinarily used and not that which exists when the state gives an unearned dole to an indigent. The state recognized that in the interest of the public welfare those who were able and willing to work and needed work should have an opportunity to earn a livelihood by being given employment and had in mind that the public would, in cases of work relief, receive a return for the service performed. If we consider the facts of this case and the findings of the referee and board in the light of the statute, Eugene Hattler undertook to furnish twenty hours of labor on a county road and the County of Wayne undertook to employ him. He was to be paid by the Commonwealth on a basis of twenty-five cents per hour. The relationship thus created differs only from that existing where the county employs laborers in the usual course of its business in that here the state provided the funds for meeting the cost. In one case the funds come from local taxation and in the other from state-wide taxation. In either case the funds are public funds but come through different channels. The situation presented here is not an unusual one, for the state has frequently provided funds and thus given aid to townships and other municipalities in the construction of roads and bridges. It is true that in one case the state is interested alone in improving its highways and in

the other it has a similar result in mind combined with a desire and purpose to promote the public welfare by relieving unemployment. Our conclusion is that the elements of a contract existed here between Eugene Hattler and the County of Wayne just as definitely as they exist in the case of an ordinary employment in the usual course of the business of a county.

It remains to inquire whether Hattler is entitled to compensation as an employee of the County of Wayne, within the terms of the Workmen's Compensation Act of 1915. The terms "employer" and "employee" are defined by that act as follows: "The term 'employer' as used in this act is declared to be synonymous with master, and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it" (77 PS 21). "The term 'employee' as used in this act is declared to be synonymous with servant, and includes all natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer, and exclusive of persons to whom articles or materials are given out to be made up, cleaned, washed, altered, ornamented, finished, or repaired, or adapted for sale, in the worker's own home, or on other premises not under the control or management of the employer" (77 PS 22). Section 106 of the act is as follows: "The exercise and performance of the powers and duties of a local or other public authority shall, for the purposes of this act, be treated as the trade or business of the authority" (77 PS 26).

"At the time of the passage of the act, the words master and servant had a fixed and determined meaning, while the relation of master and servant, and the

duties, obligations and responsibilities arising thereunder were clearly defined and established. It was in full view of this fact that, without attempting any distinction between the term employee and the term servant, the act declares that for purposes within its provisions the two terms shall be regarded as synonymous": Smith v. State Workmen's Ins. Fund, 262 Pa. 286, 291, 105 A. 90. As both appellant and appellee have cited McColligan v. Penna. R. R. Co., 214 Pa. 229, 63 A. 792, for a definition of "master," we will examine the facts in connection with the definition as there approved, which is as follows (p. 232) : "A master is one who stands to another in such a relation that he not only controls the results of the work of that other, but also may direct the manner in which such work shall be done. A servant is one who is employed to render personal services to his employer otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter. The relation of master and servant exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done, and the way and manner in which it shall be done."

Section 104 defines an employee as synonymous with a servant who performs services for another for a *valuable* consideration, and here Eugene Hattler was to receive from the Commonwealth food orders of the value of twenty-five cents per hour of service rendered, which was a sufficient consideration. "Section 104, in defining an employee as one who performs services for another 'for a valuable consideration,' does not specify that any particular person shall pay this consideration, and its language is not to be construed as conditioning liability to meet a claim for compensation on payment of wages by the person

against whom the claim is made, or on the existence of an obligation to so pay wages": Atherholt v. Stoddart Co., 286 Pa. 278, 280, 133 A. 504.

The county transported the men designated for this work by the Emergency Relief Board of Wayne County to the place of employment where they were placed under the "instructions" of Russell Gager who was then and had been "off and on for eight years" a caretaker in charge of road work for the county as the representative of the county and paid by the county. He directed the men and kept their time. We have here present all the elements essential to create the relationship of master and servant. The caretaker or road foreman controlled the result of the work done by Hattler and directed the manner in which it should be done. We cannot agree with appellee that the county did not select Hattler. It is true that the men who were to work on the road were chosen by the Emergency Relief Board, but the county had made application for men to do a particular task. If the county had applied to an employment bureau for men and such bureau had supplied a number of laborers and delivered them to the county commissioners who placed them at work or proceeded to do so, it surely could not be said that the county had not selected the employees. We see no difference in the two situations. Neither have we any doubt of the right of the county commissioners to have discharged or terminated the employment of any of these men just as they might have dismissed any other employees. The county had the undoubted right to reject the services of any or all of the men sent to work on the roads. It could have discontinued the work which would have been an effective discharge. The laws of the state impose a duty on the county commissioners to supervise the construction and repair of county roads, and persons not chosen by them,

unless it be the state highway department, have no right to interfere with such work. There was not a scintilla of evidence in the record to show any abridgment of the power of such officers to have discharged even a work relief employee if they saw fit to do so. In fact, if there was occasion and a reason for so acting arose, it would have been their positive duty to have removed such employees. Neither are we able to comprehend how it could be said that the county did not have the right to direct what work should be done and the way and manner in which it should be done, for such was the apparent purpose of the county in choosing a foreman to supervise the work. We are of the opinion that the evidence was ample to support the finding of fact by the board that Eugene Hattler was an employee of the County of Wayne.

The court below cites from this jurisdiction the case of Lehman v. Northumberland County, 87 Pa. Superior Ct. 440. There a viewer appointed by the court of quarter sessions to inspect a county bridge sought compensation for injuries received while enroute to view the bridge. That case is readily distinguishable from the case we are considering in that there the county commissioners had no right to select the person who should perform the duties, and the relationship was not one of employer and employee but strongly resembled that of a juror and, in addition, did not arise by virtue of any contract of hiring either express or implied.

From other jurisdictions three cases are cited to which we will briefly refer. In re Moore, (Ind.) 187 N. E. 219, was a case in which a person receiving relief was assigned to Ball State Teachers' College and was injured while performing labor for the college. It, however, distinctly appeared that the relief had been furnished before the work was done and that the service was entirely voluntary with no promise of com-

pensation for the rendering of such service. That court in its opinion said: "It does not appear that any person was to pay for the labor deceased was performing, nor that any person was ever to be remunerated in any manner for the service he rendered to the college." Vaivida v. Grand Rapids, 264 Mich. 204, 249 N. W. 826, was ruled upon this principle: "Municipalities called upon to support paupers have a right to their services and earnings to aid in their support." This indicates clearly that the basic arrangement was essentially different from that existing in this case. Thurston Co. Chap. Amer. Nat. Red Cross v. Dept. L. & I. of Washington, 166 Wash. 488, 7 Pac. (2nd) 577, was an action brought to restrain the collection of premiums for industrial insurance. The court considered the liability both of the Red Cross and of the county for which the work was being done. There was a dissenting opinion in that case with which we are much more impressed than that of the majority, and the ultimate decision as to the liability of the county rested upon the question of the right of the municipality to discharge the employee. We have considered that phase of the controversy.

It has also been suggested that the compensation should have been calculated on a basis of forty-four per cent of twelve dollars rather than forty-five per cent. The percentage of compensation is clearly fixed by Section 307 of the Compensation Law, par. 5, as amended by Act of April 26, 1929, P. L. 829 (77 PS 561), at forty-five per centum of wages. As nearly as we can gather from the appellee's brief, he has confused the provision for compensation payable to a surviving widow where there are no children entitled to compensation with that to which a surviving parent is entitled.

Judgment of the lower court is reversed, and the

record is remitted to the court below with instructions to enter a judgment in accordance with the findings and conclusions of the Workmen's Compensation Board.