ARTHUR OSWALT, Appellant, v. LUCAS COUNTY, IOWA, Appellee.

No. 43677.

JANUARY 12, 1937.

1100

John Jarvis, County Attorney, for appellee.

H. V. Levis, for appellant.

DONEGAN, J.—While working upon a secondary road in Lucas county, Iowa, on February 8, 1935, the appellant herein received an injury which resulted in the loss of his right eye. He filed a petition with the industrial commissioner of the state of Iowa, alleging that at the time of his injury he was in the employ of Lucas county, and asking that compensation be awarded him against the county under the provisions of the Workmen's Compensation Act (Code 1931, sec. 1361 et seq.). The defendant county filed an answer denying the allegations of the petition, alleging that, at the time of his injury, the claimant was not an employee of the defendant, that he was engaged in casual employment not for the purpose of the defendant's trade or business, and that his injury did not arise out of and in the course of his employment. Hearing by a board of arbitrators was waived, and the case was tried to the deputy industrial commissioner who found that the claimant was entitled to compensation. The defendant county filed a petition for review and, upon such review, the Iowa industrial commissioner affirmed the decision of the deputy industrial commissioner. From this decision of the Iowa industrial commissioner the defendant county appealed to the district court of Lucas county, Iowa, which reversed the decision of the industrial commissioner and taxed the costs to the claimant. From this judgment of the district court of Lucas county reversing the decision of the industrial commissioner, the claimant appeals to this court.

■■■ There is no dispute in the facts of this case, which were all presented under a stipulation. The district court, therefore, was not bound, and this court is not bound, by the decision reached by the industrial commissioner, if the undisputed facts do not support the order entered by him, and if there is not

sufficient evidence to warrant the making of such order. Code, 1931, section 1452; Mallinger v. Webster City Oil Company et al., 211 Iowa 847, 234 N. W. 254; Petersen v. Corno Mills Company, 216 Iowa 894, 249 N. W. 408; Almquist v. Shenandoah Nurseries, Inc., et al., 218 Iowa 724, 254 N. W. 35; Hoover v. Independent School District, 220 Iowa 1364, 264 N. W. 611.

**■■■** The burden in this case was upon the claimant to establish his right to compensation. In order to establish such right it was incumbent upon him to prove that, at the time the injury was sustained by him, the relation of employee and employer existed between him and the defendant county. Code, 1931, section 1421, subdivision 2. If the facts presented in the evidence were not such as to support the finding and decision of the industrial commissioner that such relationship did exist at the time the appellant sustained his injury, the decision of the industrial commissioner cannot stand and the district court was right in reversing it. In order to determine whether such relationship existed, it becomes necessary to state briefly the essential facts involved in this case.

In the year 1934, owing to a severe drought and the business depression which was still prevailing, a great many people in Lucas county were dependent upon public relief. Prior to that time the congress of the United States had passed an act commonly known as the Federal Emergency Relief Act (15 USCA, section 721 et seq.), under which grants of federal funds were made to the different states to aid them in furnishing relief. Pursuant to application made by the governor of Iowa, federal funds were allotted to this state and the legislature of this state appropriated additional funds which, with the funds received from the federal government, were deposited in the Iowa-Des Moines National Bank & Trust Company, payable to the Iowa Emergency Relief Administration. The Iowa Emergency Relief Administration was organized as a corporation, not for pecuniary profit, under the laws of the state of Iowa, for the purpose of administering the funds thus provided. This corporation will be referred to hereinafter as the I. E. R. A. Lucas county, Iowa, made application to the I. E. R. A. for the approval of an emergency relief work project, which consisted of surfacing county roads in various localities with gravel and shale. The total cost of such project was given as $19,643, of which the county offered to contribute the sum of $5,443 and asked that the I. E. R. A.

furnish the balance. It does not appear that any part of the $5,443 which the county contributed to the project was ever placed in the fund held by the bank in Des Moines to the account of the I. E. R. A. The project was approved and the work thereon was later begun.

The general procedure in connection with the selection of the workers and the carrying on of the work and payment therefor was about as follows: The I. E. R. A. appointed a local director of relief, a local case worker, and a local work relief engineer who also acted as assignment officer. The cases of persons seeking work relief were investigated by the case worker, reported to the local director of relief, and certified by the local director of relief, on a form designated as ''assignment requisition'', as eligible to a certain amount in dollars and cents of work relief per month. This assignment requisition was presented to the local work relief engineer and assignment officer, who assigned the relief worker to a certain number of hours work upon certain designated days at the rate of 40 cents per hour (the total hours at the rate per hour making up the total in dollars and cents of the monthly relief), and directed him to the portion of the project on which he was to work under a certain foreman. The local county engineer had general supervision of the work in conjunction with the work relief engineer appointed by the I. E. R. A. and the work was done under the direct supervision of a foreman, and both the county engineer and the foreman were employed by and paid by the county. A daily time sheet was made out by the foreman, and from these daily time sheets a payroll was made out. From this payroll checks were made out in the office of the I. E. R. A. at Des Moines. These checks were signed by the governor, were drawn upon the account of the I. E. R. A. in the bank at Des Moines, and were then sent to the office of the county engineer for distribution.

In the instant case, it appears that the claimant, Arthur Oswalt, had been receiving relief from Lucas county at different intervals from the 14th day of March, 1934, which was prior to the time work began upon the Lucas county project, and that after work began on this project he continued to receive such relief. The report of the county worker, H. M. Newell, shows that on December 4, 1934, his order for work relief was increased to $19.20 per month. On the following day, an assignment requisition was issued by Lois J. Utterback, the local director of relief

for the I. E. R. A. (who was also the overseer of the poor for Lucas county), and countersigned by H. M. Newell, county worker, certifying that Oswalt was eligible to work relief in said sum of $19.20 each month until further notice. On February 1, 1935, the assignment and identification card was signed by Jake Hoeksema, resident work relief engineer and assignment officer of the I. E. R. A., fixing Oswalt's days and hours of work during the month of February, and the rate of 40 cents per hour, making a total of $19.20 work relief for that month, and assigning him to a particular part of the work under C. B. Foster as foreman. On the 21st day of February, 1935, a work relief stop card signed by Lois J. Utterback, and also signed ''Newell'', was issued and directed to the work division assignment office and timekeeper, stating that Oswalt was not to be extended further work relief, beginning February 21, 1935. This work relief stop card was issued because of the injury to his eye which Oswalt had sustained on February 8th, and thereafter a check was issued to him in payment for the hours of work performed by him up to the time when the stop card was issued.

The connection of Lucas county with the project seems to have been confined to the designation of the roads or parts of roads on which the work would be done, the furnishing of tools to the workers, the general supervision of the work by the county engineer, and the doing of the work under the immediate direction of a foreman appointed by the county. The county, it is true, also contributed from its funds to the carrying on of the work, but it appears that a part of the county's contribution was used for materials, teams, trucks and equipment, and that of the remainder of such contribution, which was designated for wages and salaries, no part was used in paying the relief workers, such as Oswalt, who were designated as ''single hands''. The I. E. R. A., on the other hand, furnished most of the money for the carrying out of the project, and furnished all of that portion used in paying the workmen who, like Oswalt, were designated as ''single hands''. It appointed the case worker, the local director of relief, and the resident work relief engineer. Through the case worker it investigated the case of Oswalt and reported to the local director of relief. Although this local director of relief was the same person as the overseer of the poor for Lucas county, and undoubtedly used her knowledge acquired as such overseer of the poor in certifying persons entitled to relief

work, we think the evidence shows that, in certifying the persons entitled to work relief on this project, she was acting in her capacity as local director of relief of the I. E. R. A. After the assignment requisition had been issued by her it was presented to Hoeksema, the resident work relief engineer and assignment officer of the I. E. R. A., and by him Oswalt was assigned certain hours to work upon certain days of the month at a certain wage, and directed to the portion of the project upon which he was to work. While the county engineer had general supervision of the work, apparently such supervision was not absolute but was to be exercised in conjunction with the supervision of Hoeksema, the resident work relief engineer and assignment officer.

Appellant argues that, because Oswalt was certified as entitled to work relief by Lois J. Utterback, who was the overseer of the poor for Lucas county, the county, therefore, had control of the selection of him as its employee; that, because the work done by Oswalt was under the general supervision of the county engineer and under the direct supervision of the foreman on the job, who were selected and paid by the county, the county exercised control over the doing of the work and the manner thereof; that, because the foreman might have objected to retaining Oswalt on the work and Miss Utterback, as overseer of the poor, might have removed him from the relief rolls, the county had the power to discharge Oswalt and terminate his services; and he contends that, because of these matters, there was sufficient evidence to support a finding that the appellant was an employee of Lucas county. In support of such contention appellant cites Hattler v. Wayne County, 117 Pa. Super. 570, 178 Atl. 513, 515; Pace v. Appanoose County, 184 Iowa 498, 168 N. W. 916; Smith v. Marshall Ice Co., 204 Iowa 1348, 217 N. W. 264; Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N. W. 254; 39 C. J. 35.

Appellee, on the other hand, contends that, under the undisputed facts, the county cannot be held to have been the employer of the claimant, because the evidence shows that, while Lois J. Utterback was acting as overseer of the poor of Lucas county, there is no evidence to show that she was legally occupying that position; because, even though she may have been the legally appointed overseer of the poor, when she selected the persons eligible and certified them for work relief on this project, she was not acting in her official capacity as overseer of the poor for Lucas county, but was acting in her official capacity as local

director of relief of the Iowa Emergency Relief Administration; because the actual assignment of Oswalt to work, the designation of the particular place upon the project where he was to work, and the foreman under whom he was to work was made by Jake Hoeksema, the resident engineer of the Iowa Emergency Relief Administration; because, while the work to which Oswalt was assigned was performed under a foreman appointed by the county and under the supervision of the county engineer, it was also performed under the supervision of the resident engineer of the I. E. R. A.; because the payroll showing the amount payable to Oswalt was sent to the office of the I. E. R. A. at Des Moines, the checks in payment for work done by him were drawn by the governor of the state on the funds of the I. E. R. A. in the bank at Des Moines, and were paid to him out of such funds.

The precise question presented for determination in this case has not hitherto been before this court. In the case of Hoover v. Independent School District, 220 Iowa 1364, 264 N. W. 611, the claimant was receiving work relief, but compensation was not claimed on the ground that he had been employed by the defendant school district, but on the ground that the claimant had been loaned to the school district by his employer. No such question is presented in this case. Even when the tests and indicia of the existence of the relationship of employer and employee, for which appellant contends, are applied to the facts of this case, we do not think they result in the establishment of such relationship between the county and the claimant. Under the undisputed facts, we do not think that there is such a showing of hiring and selection of employees, of such control of the work, and such power to discharge and terminate employment by the county, as to bring this case within the scope of the decisions in the cases cited by appellant.

But even if it be conceded that the facts would be sufficient to support a finding of the relation of employer and employee if the matter of public relief was not involved, we think the greater weight of authority in this country is to the effect that persons on relief, who perform work on relief projects, or on what is sometimes called "made work", do not perform such work as employees. The English authorities, it is true, are to the contrary, and there are authorities in this country that follow the English rule. Among the cases adopting this view, appellant cites Waycross v. Hayes, 48 Ga. App. 317, 172 S. E. 756; Forest

Preserve District v. Industrial Commission, 357 Ill. 389, 192 N. E. 342; Industrial Commission v. McWhorter, 129 Ohio St. 40, 193 N. E. 620, 96 A. L. R. 1150; Benson v. Department of Labor and Industries, 180 Wash. 655, 41 Pac. (2d) 404. In all of these cases, except the case of Forest Preserve District v. Industrial Commission, supra, it appears that the relief work was established and conducted by the municipality or county, that the relief workers were placed upon the work by agents or officers of such counties or municipalities, and that the work was done under the supervision of agents or employees of such counties or municipalities and was paid for out of funds of such counties or municipalities. In the Illinois case, a person who had been receiving aid from the Illinois Agency Relief Commission was sent to a forest preserve district, where he was paid a daily wage for a limited number of days per month, out of the funds of the forest preserve, which took receipts for payments made and presented them to the relief organization by whom the forest preserve was reimbursed. The court took the view that the case presented a situation similar to that when an employee is injured while working for a second employee to whom he has been loaned temporarily, and held that the relation of employer and employee was established.

The opposite view, that is, that the employment relief workers are not employees, has been adopted by the courts of California, Indiana, Michigan, Nevada, North Carolina, West Virginia and Wisconsin. In the case of McBurney v. Industrial Accident Commission, 220 Cal. 124, 30 Pac. (2d) 414, 416, the claimant had made application for relief, and the Bureau of County Welfare had granted such application, under a statute making it the duty of counties and cities to support indigent persons resident therein and to devise ways and means of aiding persons unable to maintain themselves to be self-supporting. In considering the proposition whether the status of employer and employee existed, the court said:

"During the time a person is receiving relief under that statute he is, in a sense, a ward of the county, in whose behalf the legislature has laid the duty upon the county to provide relief, of course only to the extent of its ability to do so. The petitioner had the right to invoke the relief granted, and under the circumstances here shown the county could not deny it. The transaction

thus far is in the field of public welfare, and the essential characteristics of a contract of hire are not present. Does the fact that a person while receiving such aid is sent out under work orders at a definite sum per hour or day thereunder supply such essentials? We are persuaded that it does not, on the record here presented. The petitioner's case was classified as an 'open welfare case'. That meant that he was entitled to relief and would be for some time to come. He would receive the relief whether he worked or not. The assistant director of relief projects testified that the bureau of county welfare provides work under a number of classifications, or a number of circumstances; that there were welfare cases when a doubt arose as to whether an applicant for relief would work if he had a chance; that in such a case a work test was prescribed for the man; that for this work he might not be paid at all, or might be paid a nominal sum, or he might be paid a substantial sum, even the equivalent of a going wage; that during the period of depression and widespread unemployment there were many able-bodied men willing to work, who would be entitled to relief under the act of 1901, but who felt an abasement in accepting it with idleness, and therefore preferred while receiving relief to be engaged in some kind of activity; that the plan evolved has proved its merit by experience and is beneficial in two aspects: First, it demonstrates to the welfare authorities the sincerity and good faith of the applicant, or the opposite; and, secondly, it relieves the recipient of the odium of idleness while receiving aid from public funds. When the county supports an indigent man, the county 'is entitled to his services and earnings to aid in his support.' * * * If a contract for hire existed, the petitioner would be entitled to enforce payment from the funds of the county of the reasonable value of the services rendered. His status as here disclosed would not lend support to such a cause of action; and we conclude that a contract of hire did not exist between the county and the petitioner at the time in question.''

This holding was followed by the California court in several other cases. In the case of San Bernardino County v. Industrial Accident Commission, 1 Cal. App. (2d) 598, 37 Pac. (2d) 122, 123, the claimant was given work on a project carried on by the county under a state appropriation for the control of flood waters, the funds for which were furnished in equal amounts from

state money and federal relief funds, no part thereof being derived from local sources. In that case the work order given to the worker recited that by ''special arrangement this work will be handled by the county of San Bernardino, and you will be employed by the county.'' The person who issued this order, however, was not an employee of the county, the county had no knowledge of the contents of the order, the wages to be paid were not fixed by the county, the engineer in charge of the construction had nothing to do with the selection of the individuals, and could refuse to give work to any man sent only if it was apparent that he was physically unfit to perform a day's work, and could not discharge them unless they proved physically unfit or deliberately were not doing a reasonable day's work. It will be apparent that the method of procedure in connection with the work involved in that case was very similar to that followed in the case at bar, but the California court, following the rule laid down in the McBurney case, held that there was no contract of employment between the county and the claimant. Other cases, in which the funds out of which relief workers were paid were provided by the federal government in connection with the appropriations from state funds, and in which the method of procedure was similar to that in the instant case, are Jackson v. North Carolina Emergency Relief Administration, 206 N. C. 274, 173 S. E. 580; State ex rel. State Board of Charities and Public Welfare v. Nevada Industrial Commission, 55 Nev. 343, 34 Pac. (2d) 408; Basham v. County Court, 114 W. Va. 376, 171 S. E. 893. See, also, In re Moore, 97 Ind. App. 492, 187 N. E. 219; Schmueser v. Copelin, 99 Ind. App. 209, 192 N. E. 123; Vaivida v. Grand Rapids, 264 Mich. 204, 249 N. W. 826, 88 A. L. R. 707; Oleksik v. Detroit, 268 Mich. 697, 256 N. W. 600; Bell v. Raleigh, 206 N. C. 275, 173 S. E. 581; Village of West Milwaukee v. Industrial Commission, 216 Wis. 29, 255 N. W. 728. A very exhaustive annotation citing all the cases above referred to and many others may be found in 96 A. L. R. 1154.

It is our conclusion that, under the undisputed facts of this case, no contract of employment could be found to exist between appellant and appellee, and that, therefore, the appellant was not entitled to compensation under the Workmen's Compensation Act. Many other matters were argued by both appellant and appellee, but, as none of these matters could change the result here reached unless the status of employer and employee

existed, between the county and the claimant, it becomes unnecessary to prolong this opinion by a further discussion.

The motion of the defendant county to dismiss the appeal herein is hereby overruled.

We hold, therefore, that the industrial commissioner was in error in finding the appellant entitled to compensation; that the judgment of the district court, reversing such decision of the industrial commissioner and dismissing the claimant's petition, was correct; and that such judgment should be and is hereby affirmed.—Affirmed.

RICHARDS, C. J., and ANDERSON, PARSONS, HAMILTON, and STIGER, JJ., concur.