## MARY OLIVIERI v. CITY OF BRIDGEPORT.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued November 9, 1939—decided January 3, 1940.

*David R. Lessler,* for the appellant (plaintiff).

*John V. Donnelly,* for the appellee (defendant).

MALTBIE, C. J.   The plaintiff's decedent suffered an injury while working for the defendant city, as the result of which he died.   Compensation was awarded to the plaintiff as a dependent.   The defendant appealed to the Superior Court and it rendered judgment vacating the award.   Then followed several procedural efforts by the plaintiff to secure a rehearing before the commissioner.   A motion to open the award was finally granted by him and upon a rehearing a second award was made in favor of the plaintiff.   Both the plaintiff and defendant appealed to the Superior Court and it rendered judgment sustaining the appeal of the defendant and setting aside the award and dismissing the appeal of the plaintiff.   An extension of time was granted to the plaintiff in which to appeal to this court and she took such an appeal.   The second finding and award presents all relevant facts to determine the rights of the plaintiff, and if they are properly before

us we need not consider the appeal from the original award.

The plaintiff's decedent, prior to the injury, had been employed by the defendant as a worker on relief. In the original finding the commissioner did not specifically state whether at the time of the injury he still occupied that position or was employed under a contract giving him the status of a regular employee of the city. The trial court, upon the appeal, regarded the finding as meaning that the plaintiff was at that time a relief worker, and that the claim of the plaintiff was that he was as such entitled to compensation because the snow removal work upon which he was engaged when injured was that usually done by the city and for which it would have had to engage others had there not been available men upon work relief; and it held that the plaintiff was not entitled to compensation because of his status as a relief worker. After that decision was announced, the plaintiff moved that it be opened and modified in order that the case might be recommitted to the commissioner to find specific subordinate facts pertaining to the issue of whether or not the plaintiff when injured was working under an agreement separate and apart from his position as a relief worker. This motion was denied upon the ground that the legal relationship between the parties was one essentially to be determined by the commissioner and that he had determined it, but the court added that if the commissioner made a mistake he would no doubt be anxious to correct it on motion made to him if it contained matter which would enable him to do so and would justify such action. Accordingly the plaintiff made a motion to him, seeking to have the finding corrected to show that the plaintiff at the time of the injury did occupy a status different from that of a relief worker. The commissioner granted the mo-

tion, and made a second award of compensation finding that the plaintiff had completed his quota of relief work for the week and that when injured he was working under a definite contract of employment with the defendant. While that finding is not as precise as it might be, if it is read in the light of the preceding course of procedure, particularly in the light of the decision of the trial court upon the appeal from the first award that as a relief worker the plaintiff was not entitled to compensation, it is clear that the commissioner based the second award upon the conclusion that when injured, the plaintiff had ceased to occupy that status.

In the commissioner's finding after the opening of the award and rehearing of the case, he stated that the motion to open might properly be dismissed because the testimony presented in connection with it was not newly discovered and could have been presented with due diligence at the original hearing, but that he granted it in view of a statement in a memorandum filed by the trial court to the effect that if the plaintiff had ground therefor she might make such a motion. The trial court squarely placed its decision sustaining the defendant's appeal and setting aside the second award, upon the ground of the commissioner's finding that the evidence offered at the second hearing was not newly discovered. The fact that evidence claimed as a basis of a motion to open an award is not newly discovered and might have been offered at the original hearing in the exercise of due diligence and that counsel, through inadvertence, has failed to present a ground upon which compensation might be allowed, do not in themselves prevent a commissioner from granting such a motion. *Kearns* v. *Torrington,* 119 Conn. 522, 526, 177 Atl. 775. In that decision we state the various considerations applicable

in passing upon it. In the absence of other controlling circumstances, the ultimate question for the determination of the compensation commissioner is whether it appears likely that an injustice has been done and upon a rehearing a different result would probably be reached. *Gonirenki* v. *American Steel & Wire Co.,* 106 Conn. 1, 12, 137 Atl. 26. In view of the fact that the original award in favor of the plaintiff was based upon the ground that the deceased at the time of his injury was a worker on relief and that upon a rehearing the commissioner found he was not at the time of his injury a worker on relief and believed that he was entitled to compensation upon this ground, it cannot be held that the commissioner had no right, in his discretion, to open the original award. The trial court was in error in sustaining the defendant's appeal and setting aside the award upon the ground upon which it based its decision. The finding of the commissioner upon the rehearing fully presents all the facts necessary to be considered and the conclusion as to the right of the plaintiff to recover compensation is so free from reasonable question that it would serve no purpose to remand the case to the Superior Court for further action by it.

With such corrections as must be made and omitting various conclusions stated, the facts as presented by the commissioner's finding, with the many additions he made to it, are as follows: In December, 1935, there were many persons residing in the defendant city who were unable to support themselves and their families and the city provided relief for them through its department of public welfare. A large sum of money was appropriated to the department by the city and from it payments for persons on relief, including work relief, were made. Applicants were placed either on direct or work relief. If a family was placed on direct

relief, the department provided for the necessities of life in accordance with a certain budget of its minimum weekly needs but paid no money to it, nor was work done by any member as a part of the relief program. When a family was placed on work relief, the city continued to supply direct relief but if there was a father or husband able to work, that was provided for him and the normal compensation paid him was thirty-five cents an hour. The normal period of work was three days in each week. The city retained the earnings of the worker for one day as a part payment for the provision made for the family. Work was given to all men on work relief, without regard to the city's need for it, its ability to use the labor advantageously, or the comparative capabilities of the men. Some of the work provided was necessary but much of it was undertaken to provide something for those on work relief to do. Single men on work relief were normally employed but two days a week and received no cash, but room rent in an amount not exceeding $1.50 a week was paid for them and they were given a food order for $3. The primary object of the work relief program was to maintain the morale of those compelled to seek the aid of the city, by making it possible for the men to work for the money they received and part of the relief provided for the family.

Men on work relief, if the city needed their services, sometimes worked more than three days if permission to do so was granted by the department of public welfare. In some instances when such work was done, the men worked fewer days during the following week, and in others they were permitted to retain their additional earnings for the work. They were paid for any additional time they worked out of the appropriation to the department of public welfare. Removal of snow from the streets of the city was under the control

of the department of public works. Men, in addition to the regular city employees, were used for this purpose as needed. Many men on work relief were so employed, sometimes doing the work as a part of their normal period of employment for three days a week, sometimes under permission to work for a longer period. Pay rolls separate from those for regular city employees, were maintained for the men on work relief and their wages were at the rate of the normal compensation for relief workers, thirty-five cents an hour, while regular employees of the city were paid wages at the rate of fifty cents per hour. On the pay roll of workers on relief, no distinction was made between men working the normal three days a week and those who were working extra days.

On December 30, 1935, the plaintiff's decedent applied to the public welfare department for relief for himself and family. A minimum budget of weekly needs for his family was established at the rate of $12.45 a week and he was placed upon work relief. During the week beginning January 20, 1936, the deceased worked the first three days. Because of a heavy snowfall he, with a number of other men, was thereafter employed in removing it, and worked Thursday and until about 10 a. m. on Friday. At that time the truck in which he was being transported from one job to another was struck by a car, causing him the injuries from which he died a few days later. On the occasion of this fall of snow, it was necessary for the city to have men working in removing it in addition to its regular employees. The director of public works, instead of hiring other men, used men on work relief for this purpose in order to give them an opportunity to earn extra money. There was no distinct hiring of these men, but they were informed by the foreman that they might work upon snow removal. The de-

ceased having completed his alloted period of three days work that week, asked to be allowed to work on snow removal. He was permitted to do so and it was understood that this would not in any way affect his status as a relief worker. The employment was entirely voluntary on his part. He worked at the normal wages for relief workers, thirty-five cents an hour. After his death the amount earned by him for this work was paid to his widow. The deceased was an alien and the state was therefore chargeable with his support. Under an agreement between the director of the state-aid and the city, it was reimbursed for at least a portion of the expenditures made for the family and for the money paid to him to the amount of $5.60 a week.

The salient facts in this statement as regards the status of the deceased are that the relief workers engaged in snow removal were not hired under a separate agreement but the persons in charge of that work used their services as needed; they continued to be paid thirty-five cents an hour, the normal pay for relief workers, while men regularly employed received fifty cents an hour; and they were paid upon the basis of a separate payroll from the appropriation made to the welfare department. The conclusion is inescapable that these men, while engaged in snow removal, continued in the status of workers on relief, the number of days they were permitted to work merely being extended. If the plaintiff is entitled to recover compensation, it must be because, under the facts of this case, he has that right as a relief worker.

The right of a relief worker to recover compensation where he has suffered injury has been discussed in numerous cases upon the basis of greatly varying circumstances. The decisions are gathered in a note, 96 A. L. R. 1154 and supplemental references, and many

of them are referred to and the underlying considerations discussed in an article in 36 Columbia Law Review, p. 555. It has been frequently stated in the opinions that a relief worker has been generally held not to be entitled to workmen's compensation for injuries received in the course of the work. That statement is not justified by the opinions read in the light of the issues determined, and relatively few of the cases are decided upon such a broad proposition. Most of the decisions could readily be distinguished from the case before us, and of those similar in their facts and the issues presented the majority hold that compensation should be allowed. Decisions which might be cited in support of a denial of compensation include the majority opinion in *Vaivida* v. *Grand Rapids,* 264 Mich. 204, 211, 249 N. W. 826; *Cody* v. *Negaunee,* 270 Mich. 336, 259 N. W. 118; *McBurney* v. *Industrial Acc. Comm.,* 220 Cal. 124, 30 Pac. (2d) 414; *Oswalt* v. *Lucus County,* 222 Iowa 1099, 270 N. W. 847, and *Jackson* v. *North Carolina Emergency Relief Administration,* 206 N. C. 274, 173 S. E. 580. However, as applied to the situation before us, at least to the extent that the deceased was engaged at the time of his injury upon regular work for the city, the Michigan cases are decidedly qualified by another case in that state, *McLaughlin* v. *Antrim County Road Comm.,* 266 Mich. 73, 253 N. W. 221, as is also the *Jackson* case, by the later North Carolina decision in *Mayze* v. *Forest City,* 207 N. C. 168, 176 S. E. 270. On the other hand, a recovery of compensation in analogous situations has been upheld in the following decisions: *Gilroy* v. *Mackie,* 2 B. W. C. C. 269; *Industrial Comm.* v. *McWhorter,* 129 Ohio St. 40, 193 N. E. 620; *Hattler* v. *Wayne County,* 320 Pa. St. 280, 182 Atl. 526; *Weber County-Ogden City Relief Committee* v. *Industrial Comm.,* 93 Utah 85, 71 Pac. (2d) 177; *Clark* v. *North*

*Dakota Workmen's Compensation Bureau,* 66 N. D. 17, 262 N. W. 249; *Cristillo* v. *Township of Irondale,* 195 Minn. 264, 262 N. W. 632; *Lincoln County* v. *Industrial Comm.,* 228 Wis. 126, 279 N. W. 632; *Garney* v. *Department of Labor & Industries,* 180 Wash. 645, 41 Pac. (2d) 400; *Blake* v. *Department of Labor & Industries,* 196 Wash. 681, 84 Pac. (2d) 365. While not directly in point, the reasoning in the case of *Matter of Hall* v. *Salvation Army,* 261 N. Y. 110, 184 N. E. 691, may profitably be considered.

The Workmen's Compensation Act applies whenever persons are in the mutual relationship of employer and employee. General Statutes, § 5226. "All contracts of employment," with certain specified exceptions are within it. General Statutes, § 5227. The act defines an employee as any person, with certain exceptions not now relevant, who has entered into or works under any contract of service with an employer; and it includes in its definition of an employer, any public corporation within the state using the services of another for pay. General Statutes, § 5223. The finding is that, since the family of the decedent was in need, the city would have supplied the necessities included in the budget it prepared, whether the deceased worked or not. His acceptance of work was a voluntary act on his part and created a contract between him and the city under which he worked for it upon an agreement, implied if not expressed, that it would pay him a certain wage for the work he did. If, for instance, he had performed work and the city had refused payment, there can be no doubt that he could have enforced its obligation in an action at law. If, for the moment, we lay out of consideration the circumstances involved in his application for and the giving of relief and the use made of the money he earned, there can be no question that the mutual relationship of em-

ployer and employee existed between him and the city within the terms of the act. The plaintiff can be denied compensation only if we read into it an exception which it does not state.

If the deceased could have been compelled to perform labor for the city as a condition of its extending relief to him and his family, if the performance of that labor was merely an incident of his status as a pauper, he could very likely be held to be outside the provisions of the Compensation Act. That is not the situation before us, and to determine the case upon such a basis would be entirely to misconceive the purpose of work relief such as that afforded in this case. To give employment to men out of work as a substitute for direct relief to them and their families is today a recognized means, and whenever possible generally considered to be the preferred means, of assisting those who are unable to support themselves and their families. Most of those who need assistance are unable to provide the necessities of life for themselves and their families, not because of any weakness or infirmity, but because general business conditions have produced a situation of widespread unemployment. It is undoubtedly far better for the unemployed, and also for the community, both generally, and often, as was the case here, by reason of the work accomplished, that those in need should be afforded an opportunity to earn money rather than be granted support in idleness. In no real sense are these men paupers; they are men out of work. When work is provided for them, they become again, to that extent, wage earners, not paupers performing services as an incident to their status as such. The deceased when he was injured was an employee of the city, and that his employment had its origin in the necessitous condition of himself and family and that his earnings were in part retained

to lessen the direct relief burden upon the city, cannot alter his status as such.

In *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 146, 93 Atl. 245, we stated some of the reasons why negligence as the only basis upon which an employee might recover from his employer for injuries suffered in the course of employment was replaced by a system of workmen's compensation, reasons having their source in an advantage to both the employer and employee, and we adverted to the fact that the cost to the employer becomes a charge upon industry. As such a charge, that cost is ultimately spread over a large number of persons who benefit by the results of the labor of the worker. In *Piccinim* v. *Connecticut Light & Power Co.*, 93 Conn. 423, 428, 106 Atl. 330, speaking through Prentice, C. J., we said: "Compensation is not awarded either as the price of fault or as a measure of a duty owed to the injured employee. It is given in the execution of a general public policy that sees, in its giving, a blessed relief to those called upon to suffer as the result of industrial accidents and a humane and wholesome social regulation. The underlying principle of this kind of legislation is that the ends of justice and equity will best be subserved and the general good promoted, by lifting from the shoulders of unfortunate victims of industrial mishaps and their dependents some measure of the resulting burden, and casting it upon the industry which occasioned it and, through that industry, upon society at large. It is not the immediate employer who, by this procedure, ultimately bears the burden that he is in the first instance made to assume. In its final distribution society bears it. . . . The act faces the certain prospect that individuals will have their earning power cut off or diminished, either permanently or temporarily, as the result of accidents attending their employment, and that other

persons dependent upon them will be deprived for a longer or shorter time of their customary means of support, and seeks to provide a way in which the burden of that deprivation or diminution will be lightened. The result aimed at will be achieved only in part, as long as any class of these sufferers are excepted from the beneficial operation of its provisions. Is there any reason why it should not be fully achieved, and that all those who are called upon to suffer through industrial mischances be given an equal measure of relief in the manner the statute provides?"

Public corporations have always been included within the scope of our act, no doubt because there is no substantial reason why their employees should be treated differently than employees in private industry. As applied to a public corporation, however, the spread of the expense of compensation is not the result of the working of economic laws of supply and demand, but is accomplished by reason of the fact that the cost becomes ultimately a charge upon the taxpayers. In either case the effect is that the loss to the individual, which might be devastating to him and his dependents, is shared by many, but by each to so small an extent as scarcely to be felt at all. Where a man upon work relief is injured, the loss to him or his dependents is no less than if he were a regular employee, and the reasons which justify awarding compensation apply as much in the former as in the latter situation. If it could be assumed that the injured employee would not be able to secure regular employment in the future, the continuance of direct relief to him and his family might perhaps be held to answer the requirements of justice to him, but that cannot be assumed, and the loss incurred includes the deprivation of the opportunity which otherwise he might have to secure regular employment and so cease to be in any respect a public

charge. To hold that one working on relief for a municipal corporation is entitled to workmen's compensation, is not to impose an unjustifiable burden upon it, but merely gives effect in the particular situation to the underlying basis upon which the whole system of workmen's compensation rests.

The plaintiff, a total dependent, was, under the statute in effect at the death of the deceased, entitled to receive a weekly compensation equal to one-half his average weekly earnings at the time of his death for a period not longer than three hundred and twelve weeks. General Statutes, § 5234. The method of ascertaining the average earnings under the act is prescribed by § 5238 of the General Statutes. Where the employee has been employed for twenty-six calendar weeks as calculated under the terms of the statute, the amount of his weekly earnings is determined by dividing the total wages he received during that time by the number of calendar weeks, but where the employment previous to the injury is, under the method of computation prescribed by the statute, less than the net period of two calendar weeks, the average weekly wage is "considered to be equivalent to the average weekly wage prevailing in the same or similar employment in the same locality at the time of the injury." Our statute does not contain the words found in those of several other jurisdictions, that the employment to be regarded is that "in the same class" or "grade." On the other hand, the statute does not make the basis of compensation the average earnings prevailing for the same or similar work. "Employment" involves not the work alone, but its known and recognized incidents. *Anslow* v. *Cannock Chase Colliery Co.*, L. R. (1909) A. C. 435, 437; *Matter of Littler* v. *George A. Fuller Co.*, 223 N. Y. 369, 372, 119 N. E. 554; *Thibeault's Case*, 119 Me. 336, 342, 111 Atl. 491. In the

case before us, the relief workers were doing the same work at the time the deceased was injured as regular city employees, but within the terms of the statute the employment was not the same. The former entered into an agreement under which they were normally employed only three days a week and were paid at the rate of thirty-five cents an hour. The average weekly wage prevailing in the same employment as regards them was that earned on an average each week by workers on relief under the conditions of their employment. If this were not so, the result would be that in the case of a relief worker who had been employed twenty-six weeks or more at the time of his injury, his compensation would be based upon his employment for only three days a week at thirty-five cents an hour, whereas if he had worked for less than two calendar weeks his compensation would be based upon the higher wage scale of those regularly employed by the city.

In *Mazzi* v. *Smedley Co.*, 95 Conn. 607, 112 Atl. 168, the injured employee had been employed intermittently by the defendant, sometimes only one day a week, sometimes as much as four days a week, and some weeks not at all; we held that the basis of determining his average weekly wage was the wage earned by those doing work of the nature of that he was performing who were employed a full normal week; but we pointed out (p. 614) that there was nothing in the case which involved consideration of a custom in the business making less than six days the standard week's work. While a variance in the provisions of the statutes in different jurisdictions makes it difficult to find cases strictly analogous to the one before us, the following decisions tend to support our conclusion: In *Rice's Case*, 229 Mass. 325, 118 N. E. 674, where a sixteen-year-old girl, who was a spare-time worker in

weaving industry, was employed three hours a day after school on the first five days of the week and all day on Saturday, it was held that she was not entitled to compensation based upon the earnings of the weavers regularly employed, but upon the basis of the sum which would have represented the earnings of a spare-time weaver if there had been evidence showing them. In *Adams* v. *Boorum & Pease Co.*, 166 N. Y. S. 97, it appeared that the injured employee was employed in a non-union shop where the rate of pay was $15 to $17 a week for the work he was doing, but in union shops the pay for the same work was $22 a week, and we read the opinion of the Appellate Division as having held that, unless the commission found that the usual method could not reasonably and fairly be applied, the basis of compensation would be the smaller sum. In *Fox* v. *Bachnor Bros. Co.*, 182 N. Y. S. 416, 191 App. Div. 706, it was held that a glove maker who worked at home should be compensated on the basis of the wages earned by those in the same employment who did their work at home. In *Centralia Coal Co.* v. *Industrial Comm.*, 297 Ill. 513, 130 N. E. 725, it appeared that the employee, a miner, could not earn as much as other miners doing the same kind of work because of the particular location where he was working; and the court held that the basis of compensation should be the average earnings by others in the mine doing that work not under such unfavorable conditions, but it stated (p. 518): "It may well be said that if the situation such as exists here is a normal and recognized incident of Sundermeyer's employment by reason of the nature of that employment, so that he may be reasonably held to have anticipated such conditions when he entered the employment, his compensation should be based upon his actual earnings

during the year preceding the injury and not on the average wages of workmen of the same class."

The basis of the award in this case is the "average weekly wage" prevailing in the same employment. The wages of relief workers were determined by the agreement under which they were employed, which permitted them three days work a week. They normally received payment in cash for only two days work, the city retaining the amount representing the third day's work to pay in part for the provision made for the family. This does not alter the fact that the wage for which they worked was that for the full three days, and compensation should be based thereon.

There is error, the judgment is set aside and the case remanded with direction to return it to the compensation commissioner to make an award to the plaintiff in accordance with this opinion.

In this opinion AVERY and BROWN, Js., concurred.

HINMAN, J. (dissenting). The compensation commissioner in his original finding stated that "the fact that the decedent was on the relief payroll . . . does not place him outside the status of other employees hired for the task of removing snow," and it appears to me that the resulting award was made upon the ground that the decedent, notwithstanding his having been on work relief, was, at the time of his injuries, employed under a contract distinct from his relations as a relief worker. The facts requisite to a determination of that issue were contained in that finding. On the defendant's appeal to the Superior Court from that award the trial court (Booth, J.) held that the decedent's status had not changed, but that he continued a relief worker and that there was no contract of employment between the city and him, as such relief

worker, which would bring him within the Compensation Act. It appears, therefore, that not only the issue of the relation of a relief worker to the city but also that of the effect of the decedent's engagement in snow removal was involved and considered in the first appeal and determined by the judgment rendered. An appeal to this court from that judgment could have secured a review of the decision upon both these issues but was not taken. *Kalinick* v. *Collins* Co., 116 Conn. 1, 9, 163 Atl. 460. Instead, the plaintiff filed with the commissioner a motion that the finding be elaborated as to details of subordinate facts claimed to show that the decedent was under a contract "separate and apart" from his employment as a relief worker. This the commissioner denied on the ground that the matter having been heard and decided by the Superior Court, consideration of changes in the finding was not proper. A motion to the Superior Court to open the judgment and recommit to the commissioner for additional findings supporting the claim of separate contract was denied and an appeal from the commissioner's denial of the above motion was dismissed (Cornell, J.) on the ground that "the matter has been finally determined on the appeal in this court and there is nothing now pending here in respect to it upon which this court may act. A correction of the finding which was the very basis of the court's disposition of the matter would, of course, be a vanity under such circumstances. It is still open to the claimant, if she has ground therefor, to apply to the commissioner to open and modify or vacate the finding and award."

Thereafter the plaintiff filed a petition alleging that "since the date of the original trial . . . the claimant has discovered other and further evidence [which] would be sufficient, of itself, to establish" that the decedent was engaged in work "under a specific contract

of employment, separate and apart from the employment . . . as a relief worker." As to this petition the commissioner stated that it "could very properly be dismissed because the testimony . . . was not newly discovered evidence, and with due diligence could have been presented at the original hearings," but "in view of" the suggestion of Judge Cornell (which, as above quoted, was merely that if the plaintiff had ground she could apply to the commissioner to open the award) made a new finding, amplifying somewhat the circumstances of the decedent's employment in snow removal, held that this "was a definite contract of employment" and again awarded compensation. On the defendant's appeal from this award the Superior Court (Foster, J.) construed the decision on the first appeal as holding that the snow removal work was no distinct contract but merely additional work relief and that this was not compensable, and stated that if the plaintiff felt that this decision was erroneous she could have had it reviewed by appeal. "Instead of taking such action, she sought a new trial," and though in granting it the commissioner finds that "she presented no newly discovered evidence, . . . he makes an award of compensation really based upon his view of the law, which has been overruled by this court (Booth, J.)," and the defendant's appeal was sustained on that ground. In this, in my view of the somewhat complicated and confused situation, there was no error.

If the first award, granting compensation, was made by the commissioner on the ground that the decedent's work in snow removal was under a contract distinct from his status as a relief worker and the appeal was decided on that basis, there was no occasion for amplification of the finding in that respect. Also, as the commissioner found, the additional evidence was not newly discovered, but was merely cumulative, and the

second finding added nothing essential or material to the "salient facts" upon which the majority opinion on this appeal holds that there was no change of status involved in the snow removal work, and no resulting contract of employment separate and distinct from the decedent's relation to the city as a relief worker. It follows that the plaintiff was not entitled to compensation on the basis of such a contract and as to this issue the judgment vacating the first award was correct. If the decision of the Superior Court on the first appeal be regarded as having been that the plaintiff was not entitled to compensation because the decedent's status was that of a relief worker, the determination, by that judgment, of that question and the plaintiff's rights thereunder became final when the judgment stood unappealed from. There was no need, or claim, for additional evidence or findings to establish the decedent's status as a relief worker, or other recognized ground for the commissioner to open his award if made on that basis. *Kearns* v. *Torrington,* 119 Conn. 522, 526, 177 Atl. 725. I do not find that we have gone, nor do I think we should go, so far as to permit the opening of an award by a compensation commissioner, without such ground, merely because it appears to him that injustice may have been done or that upon a rehearing a different result would probably be reached, even though, as intimated in *Gonirenki* v. *American Steel & Wire Co.,* 106 Conn. 1, 12, 137 Atl. 26, this consideration might be taken as sufficient to warrant the court on appeal in ordering a remand to the commissioner; at most, I cannot approve this cause as a basis for what amounts to a reversal by a commissioner, upon the same material facts and without new evidence not cumulative or changed conditions, of a final judgment of the Superior Court. Therefore, I am of the opinion that the trial court was correct in sustaining the de-

fendant's appeal upon the grounds stated by it, which rendered unnecessary consideration of the vexed question of the right of relief workers to workmen's compensation.

In this opinion JENNINGS, J., concurred.