[No. 25206. *En Banc.* February 26, 1935.]

JOHN GARNEY, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General* and *Browder Brown, Assistant,* for appellant.

*C. J. Henderson* and *Alfred McBee,* for respondent.

BLAKE, J.—On November 25, 1932, and for several days prior thereto, plaintiff was engaged in working

[1]Reported in 41 P. (2d) 400.

on public roads in commissioner's district No. 3, of Skagit county. He was hired by the commissioner who had charge of road work in that district, and was under the immediate direction of a foreman employed by the county. He was paid from moneys in the indigent relief fund, which had been augmented that year by the issuance by Skagit county of its general obligation bonds in the amount of one hundred thousand dollars. It seems that plaintiff was paid by some sort of a voucher, which was redeemable in warrants drawn against and paid out of this fund.

On the date mentioned, in the course of his work he sustained injuries. There is no question but that the work was extrahazardous, under the classification of extrahazardous employments contained in Rem. Rev. Stat., § 7676 (a) [P. C. § 3471]. Neither is there any question that the county is an employer, in contemplation of the workmen's compensation act, when it engages in extrahazardous work. Rem. Rev. Stat., § 7692 [P. C. § 3485]. It would seem clear that, under the plain terms of the act and the facts stated, the plaintiff would be entitled to compensation. The department, however, held that plaintiff was not an *employee,* in contemplation of the act, and dismissed his claim. The joint board affirmed the ruling of the department. Plaintiff appealed to the superior court, which reversed the ruling of the department and held that plaintiff was entitled to compensation under the act. The department appeals.

It is appellant's contention that, since the work respondent was doing was "made work," "emergency relief work," "charity work," the relationship of employer and employee did not exist between him and the county. The almost unanimous weight of authority in the United States supports this view. *Reavey v. Guild of St. Agness,* 284 Mass. 300, 187 N. E.

557; *State ex rel. State Board of Charities v. Nevada Industrial Commission*, 34 P. (2d) (Nev.) 408; *Jackson v. North Carolina Emergency Relief Administration*, 206 N. C. 274, 173 S. E. 580; *Bell v. Raleigh*, 206 N. C. 275, 173 S. E. 581; *Vaivida v. Grand Rapids*, 264 Mich. 204, 249 N. W. 826; *Davenport v. Detroit*, 268 Mich. 374, 256 N. W. 354; *West Milwaukee v. Industrial Commission*, 255 N. W. (Wis.) 728; *In re Moore*, 97 Ind. App. 492, 187 N. E. 219; *McBurney v. Industrial Accident Commission*, 220 Cal. 124, 30 P. (2d) 414; *Los Angeles County v. Industrial Accident Commission*, 140 Cal. App. 727, 35 P. (2d) 1035; *Rico v. Industrial Accident Commission*, 137 Cal. App. 772, 30 P. (2d) 584.

The reasoning of those cases seems to be that, since the county is simply performing its governmental function of giving relief to the pauper, or indigent, the relationship of employer and employee does not arise; that, by reason of the beneficence of the municipality and the necessity of the worker, the latter falls without the pale of protection of the compensation act, notwithstanding he is hired and paid by the municipality and the work he performs is extrahazardous.

Two American courts have taken the opposite view. *Waycross v. Hayes*, 48 Ga. App. 317, 172 S. E. 756; *Forest Preserve Dist. of Cook County v. Industrial Commission*, 357 Ill. 389, 192 N. E. 342. And the supreme court of North Carolina has more recently held that, if the workman is working for the municipality and paid by it, the relationship of employer and employee exists, notwithstanding compensation was paid out of funds procured from the Reconstruction Finance Corporation. *Mayze v. Forest City*, 207 N. C. 168, 176 S. E. 270. These cases are in accord with the rule adopted by the English courts early in the history of workmen's compensation legislation. *Porton v. Cen-*

*tral (Unemployed) Body for London,* 2 B. W. C. C. 296 (1908); *Gilroy v. Mackie and Others* (Leith Distress Committee), 2 B. W. C. C. 269 (1909); *MacGillivray v. The Northern Counties Institute for the Blind,* 4 B. W. C. C. 429 (1911).

Since we shall adopt the English view, we can do no better than to adopt also the cogent reasoning in support of it contained in the first of the above cited cases. The decision was by the court of appeal, and is the leading case on the subject. It is there said:

"It is said by counsel for the appellants, who has urged every possible point, that the relation of employer and workman did not exist here because it was not a matter of free choice on either side; that the Central Body could not go into the labour market and get any man they liked, but were practically, if not expressly, limited to such applicants as were sent to them by the distress committee, and that the man himself was not a free agent because he was so hard up that he was ready to take anything that was offered. I can see no foundation for that argument in either of its branches. The Central Body exists for the very purpose of providing work in proper cases. I have no doubt that they exercised their discretion with propriety and employed Porton because he was a man coming within the class of persons whom they were authorized to employ, and they thought it was a reasonable case. Porton, on the other hand, was in no way bound to come to them. He was hard up, no doubt, in the sense that he was willing to take work under rather more disadvantageous conditions than he would have done at other times. What has that to do with it? We have here a document which states the conditions of employment. It is headed 'Central (Unemployed) Body for London.' It states the hours of labour; it states the time allowed for dinner out of those hours; it states the rate of wages per hour, and it states that traveling expenses to a certain extent will be paid if previously sanctioned; then it says what deduction is to be made for lost time. The man accepts the employment; he is employed for a con-

siderable time, and the average wages extending over that time amounted to 18s. or rather more per week. We are asked to say that that did not create the relation of employer and workman between the Central Body for London and this man. If it was not a contract of employment, I cannot imagine what it was. I know no other words to describe it. It certainly was not charity; it certainly was not poor law relief. Sect. 1 (7) [Unemployed Workmen Act, 1905], if there were any doubt about it, negatives any such idea. It seems to me to be a plain case in which the Central Body were the employers and the deceased man was a workman within the definitions in the Workmen's Compensation Act.''

In the instant case, the joint board was obviously confronted by the same difficulty in describing the relationship between the county and the respondent other than in terms of employment, as the justice who delivered the foregoing opinion had in describing the relationship between the workman and the relief committee. For the joint board, in its order denying respondent's claim, said:

''A review of the file indicates that claimant, 53 years of age, on November 25, 1932, *while in the employ of Skagit county,* was riding home from work in a car driven by the county foreman when the truck struck the back of a trailer, and he sustained a laceration of the scalp and left upper eyelid and a sprained neck; that he was thereafter awarded monthly compensation to March 1, 1933, on or about which time it was discovered that he was engaged in relief work, being paid at the rate of $2.00 per day by a warrant which was negotiable for groceries or supplies, following which the claim was rejected as above noted, and from which the appeal resulted.''

We, too, are at a loss to describe the relationship other than in terms of employment. It seems apparent that, had respondent been employed on a regular road gang, and had he been paid by warrant on

the current expense fund, his right to compensation would not have been questioned. But the statute makes no such distinction, nor does it empower the department to do so. It is no concern of the department, under our workmen's compensation act, as to how the workman is paid—whether it be by cash, warrant, scrip or supplies. It is sufficient to create the relationship of employer and employee, within the purview of the act, if the county be engaged in extrahazardous work and the worker be engaged, for compensation in the performance of such work, by someone authorized by the county to hire him.

It is suggested by appellant that the case of *Thurston County Chapter, American Nat'l Red Cross v. Department of Labor and Industries,* 166 Wash. 488, 7 P. (2d) 577, is of some controlling force here. We do not so read it. That case simply holds (a) that a charitable organization such as the Red Cross was not an employer within the terms of the workmen's compensation act, and (b) that the workmen involved in that controversy were employees of the Red Cross chapter, and not employees of Thurston county.

Judgment affirmed.

MILLARD, C. J., MAIN, MITCHELL, and HOLCOMB, JJ., concur.

GERAGHTY, J., concurs in the result.

TOLMAN, J. (concurring in the result only)—In my opinion, the majority has misconceived the purpose of our state industrial insurance act, and has likewise misconstrued the self-evident purpose of the several counties in distributing relief to worthy citizens who are in distress in the form described as "made work," "emergency relief work," or by similar terms.

The whole intent and purpose of our state industrial insurance legislation is to compel industry, as a part

of the expense of production, to bear the burdens growing out of the hazards of those employed therein productively; no more and no less. To extend the purposes beyond that, and make of the industrial insurance law a general life and accident insurance, will inevitably tend to destroy the law, or to destroy industry, or both. Believing in such industrial insurance, and desiring to preserve the benefits of our act for those for whom they are intended, I strongly object to its perversion.

Quite naturally and logically, we should hold, under the facts of this particular case, that the respondent was employed to do the regular road work of the county which it would have to perform in any event, even though there were none seeking relief, and if respondent was actually so employed, it is quite immaterial how or out of what fund he was paid. But beyond that, there is no occasion to go; and even if the question were here, we should not adopt the broad rule announced by the majority, which is in direct opposition to the overwhelming weight of American authority.

Upon questions of common law, English authority is often helpful; but in construing or applying a statute which abrogates the common law, the English decisions based upon local laws which establish a dole and the like are not only not helpful, but because of dissimilarity of conditions may be positively harmful.

By our statute law, the counties are made the sole governmental agency to which the indigent may apply for relief; and whatever the duties of the state may be, the state has directed the counties to act in all matters relating to the relief of the indigent within their respective jurisdictions. True, the statute does not in terms direct the counties to provide relief work as a means of distributing relief, nor, on the other

hand, do I find any statute which forbids the counties the right to require those who are able to so perform a reasonable amount of work in return for relief given. For many years, our county poor farms have been conducted upon that principle; and so far as I am aware, no one has questioned the right of the county officials to require inmates of such institutions to perform such work and render such service as they reasonably may in return for the benefits received. Nor have I yet heard it argued that inmates of such institutions become county employees within the meaning of the industrial insurance act.

Work which is provided for the purpose of distributing relief, by whatever name it is called, is, in fact and in law, charity, and it is nothing else. An incidental return in the nature of labor or services, wisely provided for in order to remove the stigma of pauperism and to preserve the self-respect of the recipient, does not change the character of the transaction. Such is the almost unanimous holding of the American courts.

In *Vaivida v. Grand Rapids,* 264 Mich. 204, 249 N. W. 826, the supreme court of Michigan said:

"Citizens needing public aid are in a sense wards of the municipality required to support them, and, if the able among them are set at work at common and unremunerative public tasks, there does not arise a contract of hire or the relation of employer and employee, but only a helping hand in behalf of public charity invoked and extended."

In *Jackson v. North Carolina Emergency Relief Administration,* 206 N. C. 274, 173 S. E. 580, the supreme court of North Carolina said:

"The word 'employee,' as used in the North Carolina Workmen's Compensation Act, means, 'every person engaged in any employment under any appointment or contract of hire or apprenticeship, express or

implied, oral or written.' Public Laws of N. C. 1929, chapter 120, Sec. 2, par. (b) N. C. Code of 1931, sec. 8081 (i) (b). Plaintiff was not an employee; he was a 'relief worker.' He was not employed by the defendants or either of them; he was provided with work, because of his need of means of support for himself and his family. The money paid to him each week was not paid as remuneration for his work, but was paid for the relief of himself and his family. See *Basham v. County Court of Kanawha County* (W. Va.) 171 S. E. 893. The judgment is affirmed."

In *State ex rel. State Board of Charities and Public Welfare v. Nevada Industrial Commission,* 34 P. (2d) (Nev.) 408, the supreme court of Nevada said:

"In short, the court is of the opinion that such workmen are not employed by the state, the counties, the school districts, or the municipal corporations of the state, but are provided with work because of the need of means of support for themselves and their families. The money paid them is not paid as a contractual remuneration for their work, but is paid for the relief of themselves and their families. Consequently, whatever else should be done for the relief of unemployment, it is manifest that the terms, conditions, and provisions of the Nevada Industrial Insurance Act cannot be converted into something in the nature of an unemployment insurance benefit for the relief of the unemployed of this state."

To the same effect see: *In re Moore,* 97 Ind. App. 492, 187 N. E. 219; *Davenport v. Detroit,* 268 Mich. 374, 256 N. W. 354; *McBurney v. Industrial Accident Commission of California,* 220 Cal. 124, 30 P. (2d) 414; *Rico v. Industrial Accident Commission,* 137 Cal. App. 772, 30 P. (2d) 584; *Los Angeles County v. Industrial Accident Commission of California,* 140 Cal. App. 727, 35 P. (2d) 1035; *Waycross v. Hayes,* 48 Ga. App. 317, 172 S. E. 756; *West Milwaukee v. Industrial Commission,* 255 N. W. (Wis.) 728.

In *Thurston County Chapter, American Red Cross v. Department of Labor and Industries,* 166 Wash. 488, 7 P. (2d) 577, we held that charitable organizations are not within the operation of the workmen's compensation act. Applying the same principle here, it would appear that the county, while distributing relief to the indigent, is as much a charitable or benevolent organization as any private institution possibly can be. The counties are providing the relief which the statute law compels them to provide; and though they may do so through the medium of "made work," still they are engaged wholly in distributing charity, and while so engaged they are not under the industrial insurance act.

For these reasons, I cannot concur in the broad rule laid down by the majority, though I do agree that respondent in this case was hired by the county to do regular road work. Therefore, he became an employee of the county and came under the act, the mere fact that he was paid from the indigent relief fund being immaterial if his employment was otherwise regular.

I therefore concur with the majority only in the result.

BEALS and STEINERT, JJ., concur with TOLMAN, J.