[No. 26378. *En Banc.* April 2, 1937.]

ROBERT C. LAWE, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 66 P. (2d) 848.

The Attorney General, J. A. Kavaney, and Harry L. Parr, Assistants (V. D. Bradeson, of counsel), for appellant.

Albert H. Solomon, for respondent.

TOLMAN, J.—The respondent was injured while employed by the county welfare board of King county in painting the interior of a building occupied as a work room or shop by the board. The county welfare board was the local branch or subsidiary of the Washington Emergency Relief Administration (commonly called W E R A), a state agency created by chapter 8, Laws of 1933, p. 103 (Rem. Rev. Stat. (Sup.), § 9992-1 [P. C. § 4418-41] et seq.).

What is called the department of safety and injury relief, seemingly a division of the W E R A, took cognizance of the injuries, paid certain sums to the respondent for time loss, and finally closed his claim. The respondent then filed a claim with the department of labor and industries, which claim was, by the supervisor, rejected for the reason that the respondent was not, at the time of the injury, engaged in work which brought him within the industrial insurance laws. An appeal to the joint board resulted in an affirmance of the order of the supervisor and thereupon the respondent appealed to the superior court. The case was heard in the superior court upon the departmental record, resulting in findings of fact as follows:

"That Robert C. Lawe, a married man of the age of approximately fifty-seven years, was on the 21st day of August, 1934, engaged in painting work on a building which was being repaired and rebuilt by the State of Washington Emergency Relief Administra-

tion, King County Division, at a fixed wage, and under the supervision of a superintendent hired and paid also by said State of Washington Emergency Relief Administration.

"That on said 21st day of August, 1934, while so engaged, said workman fell from a scaffold and was injured.

"That he received the sum of $14.17 from the injury relief Division of said State of Washington Emergency Relief Administration for time loss, on September 4, 1934, and on the 2nd day of July, 1935, he was paid the further sum of $51.50 on account of time loss, and was given notice at said time that the same was a final payment.

"That thereafter and on the 31st day of July, 1935, said workman, feeling aggrieved at the inadequate compensation paid to him for time loss and disability resulting from said injuries, filed his claim with the Department of Labor and Industries, but that on or about the 6th day of August, 1935, the supervisor of said department rejected said *said* claim for the reason that at the time of injury the workman was not engaged in work within the jurisdiction of the division of industrial insurance.

"That thereafter and on the 12th day of August, 1935, said workman prepared, and filed on the following day with the director of said department an application for rehearing before the Joint Board thereof, claiming that he was properly within the jurisdiction of said department; that said application was granted and testimony taken upon the sole question of the jurisdiction of the department; that on the 23rd day of March, 1936, said Joint Board ordered that the decision of the supervisor as aforesaid be sustained; that thereafter and on the 3rd day of April, 1936, the said Robert C. Lawe, claimant, gave notice of appeal to the superior court from said decision.

"That the work upon which said claimant was engaged at the time of his injury was conducted by the State of Washington through the agency of the Washington Emergency Relief Administration, and that the same was extrahazardous employment within the

meaning of the workmen's compensation act of this state.''

A judgment followed which reversed the rulings of the supervisor and of the joint board, held that respondent's injuries were so received as to bring him under the workmen's compensation statutes, and' remanded the case to the department for the purpose of determining the amount of compensation to which he may be entitled. From this judgment, the department has appealed.

■ Respondent has moved to dismiss the appeal upon the theory that the judgment appealed from is not a final judgment, and therefore not appealable, because it refers back to the department the question of the amount of the recovery.

We cannot accept the argument that the judgment is not a final one. The superior court decided the only question in the cause which it had the power to decide, namely, that the claimant had brought himself within the terms of the workmen's compensation statutes. In the absence of an appeal, the department would be forever bound by that judgment, and the only way in which the department can secure a review by this court of the question decided by the superior court is by an appeal from that judgment. The motion to dismiss the appeal is denied.

■ Upon the merits, the respondent relies upon that part of Rem. Rev. Stat., § 7692 [P. C. § 3485], which reads:

"Whenever the state, county, any municipal corporation or other taxing district shall engage in any extrahazardous work, or let a contract therefor, in which workmen are employed for wages, this act shall be applicable thereto. . . . "

and upon the case of *Garney v. Department of Labor & Industries,* 180 Wash. 645, 41 P. (2d) 400, and also

the case of *Fitzgerald v. Department of Labor & Industries,* 181 Wash. 325, 42 P. (2d) 805, which follows the *Garney* case. ·

The appellant seems to take the position (1) that the respondent, though working under a state agency, was receiving Federal relief only; and (2) if not solely Federal relief, still the moneys paid for his services were distributed by the state for the relief of his distress, and that neither the state nor its agencies were engaged in extrahazardous work within the meaning of § 7692, from which we have quoted.

We have examined the record with care, and can find no basis for holding that respondent was paid from Federal funds only. If that be a defense, the burden was upon the appellant to prove it. The evidence goes no further than to show that W E R A had for use and distribution ten million dollars of state funds, as allotted to it by the governor, and also certain allotments of Federal funds; and that these funds were more or less commingled. A witness did say that presumably this particular work was paid for out of Federal funds, but on cross-examination it was quite clearly shown that he had no personal knowledge whatever upon that subject. The contrary not having been established, we must assume that the disbursements here in question came from both state and Federal funds.

This being so, our present task seems to be to construe the statute; and in doing so, we must, of course, take into consideration any construction heretofore placed upon it by our previous decisions.

This statute (§ 7692) rather clearly indicates by its terms that what the legislature had in mind was work done by the state, or its subdivisions, which would be comparable to like extrahazardous work done by private employers. This thought is clearly recog-

nized by the majority opinion in *Garney v. Department of Labor & Industries, supra,* where it is said:

"There is no question but that the work was extrahazardous, under the classification of extrahazardous employments contained in Rem. Rev. Stat., § 7676 (a) [P. C. § 3471]. Neither is there any question that the county is an employer, in contemplation of the workmen's compensation act, when it engages in extrahazardous work. Rem. Rev. Stat., § 7692 [P. C. § 3485]. It would seem clear that, under the plain terms of the act and the facts stated, the plaintiff would be entitled to compensation."

And also:

"We, too, are at a loss to describe the relationship other than in terms of employment. It seems apparent that, had respondent been employed on a regular road gang, and had he been paid by warrant on the current expense fund, his right to compensation would not have been questioned. But the statute makes no such distinction, nor does it empower the department to do so. It is no concern of the department, under our workmen's compensation act, as to how the workman is paid—whether it be by cash, warrant, scrip or supplies. It is sufficient to create the relationship of employer and employee, within the purview of the act, if the county be engaged in extrahazardous work and the worker be engaged, for compensation in the performance of such work, by someone authorized by the county to hire him."

Since the employment discussed was the regular road work which the county was obligated to perform, these two extracts show the factual base and the fundamental reason for the decision. If there be other language which goes beyond the question involved in the case and decided by the court, that language has no binding force.

In the *Garney* and *Fitzgerald* cases, *supra,* as we have said, there were involved only workmen employed to do the regular and necessary highway work

which the county (the employer) was bound to perform. Here, we have no employer who was bound to perform any work of any character; but, on the contrary, we have the sovereign state acting through a special executive agency in conjunction with the Federal government engaged in distributing relief to its distressed citizens, and nothing more. If, as an incident to that distribution of relief, work was provided to assist in maintaining the self-respect of those in need, that did not change the character of the undertaking in any degree.

The statute creating W E R A, chapter 8, Laws of 1933, p. 103, is entitled:

"An Act to relieve the people of the state from hardships and suffering caused by unemployment; creating and defining the duties of an emergency relief administration, and making an appropriation for such purpose; providing penalties, and declaring that this act shall take effect immediately."

A reading of its provisions demonstrates that there was no attempt to go beyond what is thus expressed.

Moreover, outside of an appropriation for administrative purposes, the only funds which the state supplied to W E R A were such as might be allotted to it by the governor under the terms of § 33, p. 118 (Rem. Rev. Stat. (Sup.), § 9992-33 [P. C. § 4418-73]), of the act; and, of course, the governor could only make such allotments from the proceeds of the ten million dollar bond issue provided for by chapter 65 of the Laws of 1933, p. 336 (Rem. Rev. Stat. (Sup.), § 9992-35 [P. C. § 4418-75] et seq.). No one can read the preamble to that act and successfully contend that the state borrowed that vast sum of money for any other purpose except the relief of its citizens. We quote but a part of the preamble:

"A critical emergency calling for constructive action is presented; otherwise catastrophe impends. Pauper-

izing relief is unsatisfactory and inadequate. It is imperative that existing unemployment and distress be in some measure allayed. The citizenry of the state must have opportunity for self support. So, only, is democracy safe. This obligation is upon the state. Legislation is essential for its fulfillment.''

Considering then, as we must, the intent and purpose of the industrial insurance law, which is to compel industries, as a part of the cost of production, to bear the burdens growing out of the hazards of those employed, it seems manifest that the sovereign state has placed itself under the industrial insurance act by § 7692, *supra,* only when it engages in industry, and not at all when it engages solely in distributing relief to its distressed citizens.

We have not discussed the safety and injury relief provided for under the rules adopted by the W E R A, which was accorded to the respondent, and which, speaking generally, follows the compensatory provisions of the industrial insurance laws, because the practice is so recent as to hardly amount to a construction of § 7692, *supra,* by the executive department, and also because, if respondent comes under the workmen's compensation act, he cannot be forced to accept a substitute. But we may in passing remark that these rules show a commendable attempt to protect those injured while performing relief work.

The holding in the *Garney* case applied to its facts is sound and wholesome, but that holding cannot be extended to the facts and conditions shown by this record.

The judgment is reversed.

STEINERT, C. J., and BEALS, J., concur.

MILLARD, J. (concurring)—I concur in the opinion of Tolman, J. I think, however, it falls within the rule of *Thurston County Chapter American Nat. Red*

*Cross v. Department of Labor & Industries,* 166 Wash. 488, 7 P. (2d) 577. I also am of the view that the cases distinguished should be expressly overruled.

I note the dissenting opinion as to protection of "a vast group of workmen." That is a plea which should be made to the legislative branch of the government. We should observe the law and not include within it those excluded. To do as the dissenting opinion insists be done, would be to judicially legislate and justly subject us to criticism.

GERAGHTY, J. (concurring in the result)—While I concur in the result of the majority opinion, I am not prepared to subscribe to the broad rule which the language of the opinion might imply, that all work done by the state, through the expenditure of funds appropriated for emergency relief, is outside the purview of the workmen's compensation act.

After quoting from the title and preamble of the 1933 emergency relief act, the majority opinion continues:

"No one can read the preamble to that act and successfully contend that the state borrowed that vast sum of money for any other purpose except the relief of its citizens."

The opinion then assumes, as I interpret it, that all work projects carried on with the money appropriated for emergency relief must be considered as outside the operation of the workmen's compensation act.

Many projects were carried on by the state with funds realized from the sale of the bonds authorized in 1933, and perhaps out of the ten million dollars appropriated for emergency relief in 1935, which were of such a nature that workmen engaged on them were entitled to the protection of the workmen's com-

pensation act. It is a matter of public record that a considerable portion of the first named appropriation was allocated to the construction of buildings for the three state hospitals, the institutions of higher learning, at the penal institutions, at Camp Murray, at Felts Field in Spokane, and to house the highway department at Olympia, and possibly other like projects.

The projects, while carried on at the time as an incidental aid to emergency relief, were essentially improvements then or later needed by the state. They fall within the principle announced in the *Garney* and *Fitzgerald* cases referred to in the majority opinion. In those cases, the counties were spending money appropriated for indigent relief in the performance of normal road work required to be done in any event. We held that the fact that the workmen were paid out of funds ear-marked for indigent relief did not change their status from that of employees on county work.

ROBINSON, J., concurs with GERAGHTY, J.

BLAKE, J. (dissenting)—This decision leaves without protection a vast group of workmen engaged in extrahazardous occupations—for they have no common law remedy for injury sustained in the course of their employment. And such recourse as they may have under the Washington Emergency Relief Administration set-up, in the way of time loss and medical care, is purely gratuitous, and is subject to discontinuance at any time. In case of death, their dependents have no remedy whatsoever.

If this result followed from a necessary construction of the workmen's compensation act, I should feel compelled to acquiesce in it. The decision, however, reads into the act a qualification that certainly cannot

be found in its express terms. Nor do I think it can be inferred from the terms of the act by any reasonable implication. Under the terms of the act, there are just three elements necessary to entitle a workman to compensation: (1) That the relationship of employer and employee exist; (2) that the employer be within the purview of the act; (3) that the employee be engaged in extrahazardous work and injured while in the course of his employment.

The statute (Rem. Rev. Stat., § 7692 [P. C. § 3485]) provides:

"Whenever the state . . . shall engage in any extrahazardous work . . . in which workmen are employed for wages, this act shall be applicable thereto. . . ."

Of this clause, the majority say:

"This statute (§ 7692) rather clearly indicates by its terms that what the legislature had in mind was work done by the state . . . which would be comparable to like extrahazardous work done by private employers."

Accepting this criterion, can there be any doubt but that plaintiff would be entitled to compensation had he been in the employ of a "private employer"? He was injured while engaged as a painter in the repair of a building at a stipulated wage of $1.12½ per hour. As a contract with a private employer, all the elements required by the statute are present. Yet the majority further say:

"Here, we have no employer who was bound to perform any work of any character, but, on the contrary, we have the sovereign state acting through a special executive agency in conjunction with the Federal government engaged in distributing relief to its distressed citizens, and nothing more. If, as an incident to that distribution of relief, work was provided to assist in maintaining the self-respect of those

in need, that did not change the character of the undertaking in any degree.''

Does this mean that the relationship of employer and employee did not exist between the state and plaintiff? By what other terms could the relationship be defined? Certainly, all the essential elements of such relationship are present. W E R A is a department of the state authorized to engage in construction work, just as the highway department is. It employed plaintiff in extrahazardous work at a stipulated wage of $1.12½ per hour. These facts, under the express terms of the workmen's compensation act, bring the state within the definition of an employer and the plaintiff an employee whose injuries entitle him to compensation.

Where the·money comes from to pay wages, or whether the work being performed is regular or necessary, is wholly beside the question of the workman's right to compensation. For the court to concern itself with such considerations, is to place limitations upon the scope of the workmen's compensation act which cannot be found in its terms, express or implied.

I dissent.

MAIN and HOLCOMB, JJ., concur with BLAKE, J.