[No. 26827. Department One. January 12, 1938.]

EMELIA BROOKS, as Administratrix, Appellant, v. THE CITY OF SEATTLE, Respondent.[1]

[1]Reported in 74 P. (2d) 1008.

254

*George F. Hannan* (*W. H. Cook,* of counsel), for appellant.

*A. C. Van Soelen, John E. Sanders,* and *Jno. A. Homer,* for respondent.

GERAGHTY, J.—In this action, the plaintiff, as administratrix, sues to recover damages from the city of Seattle on account of the death of her husband, alleged to have been caused by the negligence of the city.

The complaint states that the city was the owner, and engaged in the erection, of a bridge across Cedar river, at or near the town of Cedar Falls, in King county; that, on March 19, 1934, in the course of construction, one of the bents, on which the decedent was

working, collapsed, throwing him to the river bed below and causing his death.

It is alleged that the accident resulted from the negligent acts of the city, its supervisors, superintendents, and vice principals, as detailed in the complaint; and that, although decedent was a civil employee of the United States working under the civil works administration, he was, nevertheless, while so employed,

". . . loaned or given to the city of Seattle by the said C. W. A. as aforesaid in doing the work herein mentioned under the direction and control of the city of Seattle, its servants and agents as herein alleged."

It is further alleged that the decedent came upon the premises and the bridge at the invitation of the defendant and, at the time of the injury, was its invitee.

That, by virtue of the arrangement entered into between the defendant and the United States, evidenced by a writing, a portion of which is embodied in the complaint, the United States of America was to give the defendant men and pay their wages for working on the bridge, and the defendant was to furnish the plans, specifications, and material, and have entire supervision of its erection.

As a second and alternative cause of action, it is alleged that the city had made no preliminary report or estimate of its payroll to the department of labor and industries of the state of Washington covering the men employed upon the bridge, nor did it pay or tender any premiums to the department, or make a record of any sort concerning its payroll; that, if the decedent, at the time and place, was under the workmen's compensation act of the state, then the defendant had failed to comply with the provisions of the act, in so far as it relates to the decedent, and was, at the time of the injuries and since, in default in this respect.

Damages are prayed for in the aggregate of fifty-

three thousand dollars on behalf of the plaintiff and five minor children, ranging in ages from eleven to eighteen years.

After certain denials and admissions, the defendant, by way of an affirmative defense, pleaded contributory negligence and assumption of risk. It was also alleged that the decedent was employed by and subject solely to the exclusive direction and control of the civil works administration of the United States under authority of congressional enactments (48 Stat. 200 *et seq.;* 40 U. S. C. A. (Sup.), § 401 *et seq.*) and was so employed at the time of his death; that the civil works administration was engaged in and had the entire supervision and control of the construction and erection of the bridge referred to in the complaint; that the United States, through the civil works administration, was prosecuting its declared policy of relieving national unemployment, and the defendant was assisting and co-operating with the Federal government in furtherance of its policy.

The answer further alleged that the plaintiff applied for, and is now receiving for herself and minor children, compensation under the United States Employees' Compensation Acts (39 Stat. 742 *et seq.;* 5 U. S. C. A., § 751 *et seq.*, and 48 Stat. 351; 5 U. S. C. A. (Sup.), § 796) and the rules and regulations promulgated under authority thereof, which statutes barred her from recovery in this action.

The cause was tried to the court and a jury. A verdict was returned in favor of the plaintiff in the sum of $4,750, being $4,745 for the widow and one dollar for each of the minor children.

After the return of the verdict, the plaintiff moved for a new trial, based principally upon the inadequacy of the verdict. The defendant moved for judgment notwithstanding the verdict. The defendant's motion

was granted and the plaintiff's motion for a new trial denied. The plaintiff appeals.

Errors are assigned upon the rendition of judgment notwithstanding the verdict and the denial of the motion for a new trial.

To an understanding of the relation between the Federal government, acting through the civil works administration, and the city, it is necessary to refer somewhat in detail to the congressional legislation and the departmental rules promulgated under its authority.

The National Recovery Act of June 16, 1933 (48 Stat. 200 *et seq.;* 40 U. S. C. A. (Sup.), § 401 *et seq.*) provides:

"(a)  To effectuate the purposes of this chapter, the President is hereby authorized to create a Federal Emergency Administration of Public Works, all the powers of which shall be exercised by a Federal Emergency Administrator of Public Works (hereafter referred to as the 'Administrator'), and to establish such agencies, *to accept and utilize such voluntary and uncompensated services,* to appoint, without regard to the civil service laws, such officers and employees, and to utilize such Federal officers and employees, and, with the consent of the State, such State and local officers and employees as he may find necessary, to prescribe their authorities, duties, responsibilities, and tenure, and, without regard to chapter 13 of Title 5, to fix the compensation of any officers and employees so appointed.  The President may delegate any of his functions and powers under this chapter to such officers, agents, and employees as he may designate or appoint."  (Italics ours.)

Section 402 of the act provides that the administrator, under the direction of the president, shall prepare a comprehensive program of public works, which shall include among other things the following:

"(a)  Construction, repair, and improvement of public highways and park ways, public buildings, and

any publicly owned instrumentalities and facilities; (b) conservation and development of natural resources, including control, utilization, and purification of waters, prevention of soil or coastal erosion, development of water power, transmission of electrical energy, and construction of river and harbor improvements and flood control . . ."

■ November 15, 1933, the civil works administration, through Harry L. Hopkins, administrator, issued rules eand regulations governing civil works administration projects. A copy of these rules was offered in evidence by the respondent at the trial, but was excluded on objection by the appellant. The rules were undoubtedly relevant and material, because they were referred to in the city's application tendering the project to the civil works administration and are necessary to an understanding of it. Apart from this, as departmental regulations issued under authority of the act of Congress, the court will take judicial notice of them. *Whitney v. Spratt,* 25 Wash. 62, 64 Pac. 919, 87 Am. St. 738.

These rules recite that the president, on November 7, 1933, created the Federal civil works administration and appointed Harry L. Hopkins administrator, the purpose of the administration being to provide regular work on public works at regular wages for unemployed persons able and willing to work; the administrator was to appoint the state and local civil works administrations.

"The objective of the Civil Works Administration is the employment of 4,000,000 persons by December 15, 1933. Two million of these persons receiving relief on November 16th, 1933, either as work-relief or direct relief, are to be employed on Civil Works projects by direct transference from the relief office to Civil Works projects on or before December 1st, 1933."

It was the intention of the Federal civil works administrator to use, in so far as practicable, existing

work divisions of the Federal, state, and local emergency relief administrations. Additional technical personnel, if found necessary, was to be appointed by the Federal civil works administrator.

In respect of projects, the rules provide:

"All public works projects of the character heretofore constructed or carried on either by the public authority or with public aid to serve the interest of the general public are eligible, provided that (1) they are socially and economically desirable, and (2) they may be undertaken quickly. All Civil Works projects must be carried on by force account (day labor), and not by contract."

Rule seven provides that civil works projects were to be first submitted to the local civil works administration on forms to be furnished by the Federal civil works administration, which, in turn, is to submit them to the state civil works administration for approval.

Rule nine provides:

"In carrying out Civil Works projects, the Civil Works Administration *will use the operating departments of public bodies,* except where the Civil Works Administration directly carries out Civil Works projects." (Italics ours.)

As having a bearing upon the status of civil works employees, reference should be made to the fact that Congress, by the act of February 15, 1934 (5 U. S. C. A. (Sup.), § 796), extended the provisions of the Federal employees' compensation act over employees of the works administration. This act will later be referred to in more detail.

The city made application to the civil works administration for approval of the project with which we are here concerned. The project covered work to be done on the upper Cedar river watershed, from which the city derives its water supply. The project embraced

the dismantling of a bridge across that river and the removal and reassembling of the parts to a lower point near Cedar Falls.

The application recites that it was made "under the rules and regulations of the Civil Works Administration." It is signed by Otto D. Rohlfs, superintendent of water for the city, and accepted by A. M. Young, chief engineer for the local civil works administration.

The decedent, a bridge carpenter, was employed in re-erecting the bridge referred to. Through the collapse of a bent of the superstructure, on which he was working at the time, he was thrown to the bed of the river thirty feet below and killed instantly. It may be assumed that the section of the bridge collapsed through someone's negligence.

In the briefs, the parties attempt to characterize the relation existing between the Federal government and the city as falling within certain technical formulas. As we have seen, the appellant took the position in her complaint that the decedent was loaned to the city and came within the loaned servant doctrine. In her brief, she contends the city was in default in respect of its agreement to supply adequate plans and supervision, and also alleges that the decedent was an invitee of the city and was injured on its premises through its negligence. The respondent, among other contentions, argues that the civil works administration occupied the relation to the city of an independent contractor. But we think the relation can be ascertained by reference to the act of Congress, the rules and regulations, and the city's application to the civil works administration.

We do not conceive that the relation between the Federal government and the city was one growing out of contract in the ordinary sense of the term. The Federal government operates directly upon all of its

citizens and has an immediate interest in their well-being. Prompted by this concern, it created the civil works administration, having for its object the re-employment of four million persons on public works at adequate wages. The plan of employment involved the doing, by the government itself, of public works projects of the character theretofore constructed or carried on either by the public authority or with public aid to serve the interest of the general public, provided that they be "socially and economically desirable" and "they may be undertaken quickly."

The projects were not undertaken for the benefit of the civil corporate organizations of territorial subdivisions, but primarily for relieving unemployment and, incidentally, for the utility and convenience of the general public as distinguished from local corporate entities.

The Federal government assumed the execution of these public works projects in virtue of its obligation to its citizens and its power to further the general welfare.

The city's application to the civil works administration amounted to the tender of a project for execution. The administration could, as it did in this instance, impose conditions upon its acceptance of the project, the condition imposed here being that all material required was to be supplied by the city; and, further, that, in so far as required and necessary, the administration should have the use of the city's operating departments. So that any technical employees of the city detailed to the Federal government in the prosecution of the project became, to the extent they were employed, a part of the administration's working organization, even though paid by the city; in other words, they were as much a part of the city's contribution to the project as the material and the site. This thought

is expressed in *Hoover v. Independent School Dist.*, 220 Iowa 1364, 264 N. W. 611, where the court said:

"Without reference to the details, it is sufficient to say that the particular project on which these men were working was carried on as a Civil Works project as distinguished from a school district project. That is, the work was being done by the Civil Works Administration. Whatever aid to the project was furnished by the school district was furnished by way of contribution to the Civil Works Administration. The purpose of the Civil Works Administration was to create employment. It was set up under the provisions of the National Industrial Recovery Act, 48 Stat. 195, for that purpose. It undertook these projects with the consent of the public body affected by the project as a means of furnishing employment. *The fact that the property of the school district was benefited, and the further fact that representatives of the school district were present when the work was being done to see that the completed job conformed to its plan for the improvement, are not controlling.* The purpose of the Civil Works Administration was being accomplished by carrying out these projects with workmen employed by it." (Italics ours.)

While the issue in that case was whether the injured workmen were covered by the Iowa workmen's compensation act, the principle announced is pertinent here.

After the death of her husband, the appellant applied for, and is now receiving, compensation from the Federal government under its employees' compensation act. The respondent contends that, by accepting this compensation, she is barred from maintaining a suit for damages against the city.

We have already referred to the fact that, in February, 1934, and before the decedent's death, civil works administration employees were placed under this act. The compensation act provides that, in case of an injury or death for which compensation is payable under

circumstances creating a legal liability upon some person other than the United States, the commission administering the act may require the beneficiary to assign to the United States any right of action which he may have to enforce such liability, or the commission may require the beneficiary to prosecute the action in his own name.

The act further provides (39 Stat. 747; 5 U. S. C. A., § 777):

"If an injury or death for which compensation is payable under this chapter is caused under circumstances creating a legal liability in some person other than the United States to pay damages therefor, and a beneficiary entitled to compensation from the United States for such injury or death receives, as a result of a suit brought by him or on his behalf, any money or other property in satisfaction of the liability of such other person, such beneficiary shall, after deducting the costs of suit and a reasonable attorney's fee, apply the money or other property so received in the following manner:

"(A) If his compensation has been paid in whole or in part, he shall refund to the United States the amount of compensation which has been paid to the United States and credit any surplus upon future payments of compensation payable to him on account of the same injury. Any amount so refunded to the United States shall be placed to the credit of the employees' compensation fund.

"(B) If no compensation has been paid to him by the United States, he shall credit the money or other property so received upon any compensation payable to him by the United States on account of the same injury."

Commenting on this section, the circuit court of appeals for the eighth circuit, in *Hines v. Dahn*, 267 Fed. 105, said:

"It plainly appears from the statute above quoted that whether the employe assigns his cause of action against a person other than the United States to the

United States, and the same is prosecuted by said commission, or whether the employe prosecutes the cause of action himself, the employe gains nothing, but the whole recovery after deduction of the expense of litigation either goes into the compensation fund out of which employes are paid, or is retained by the employe and the amount thereof is credited to the United States on future payments. So that in any event the employe realizes nothing from the liability of a person other than the United States. In this very case the plaintiff would receive nothing, if he should collect his judgment other than his compensation under the Compensation Act."

It could be contended, with some reason, that, while the appellant might be required to account to the Federal government after recovery, she would, nevertheless, have a right to maintain her suit. However, in view of our conclusion that the judgment of the trial court should be affirmed on another ground, it is unnecessary for us to announce a conclusion on this issue.

The judgment of the trial court is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and SIMPSON, JJ., concur.