[No. 26409. *En Banc.* March 17, 1938.]

FRANK REID, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*Lester Whitmore,* for respondent.

[1]Reported in 77 P. (2d) 589.

STEINERT, C. J.—In this action, recovery for personal injuries was sought under the provisions. of the state workmen's .compensation act. The claim of the workman was rejected by the supervisor of the department of labor and industries. On rehearing by the joint board, the decision of the supervisor was affirmed, on the sole and specific ground that, at the time of the alleged injury, the claimant was not engaged in work within the jurisdiction of the division of industrial insurance. On appeal to the superior court, where the case was tried without a jury, judgment was entered reversing the decisions of the supervisor and the joint board, respectively, and remanding the cause to the department with direction to classify the workman as within the purview of the act·and to determine the claim upon its merits. The department has appealed.

Respondent has moved to dismiss the appeal and affirm the judgment on the grounds (1) that the statement of facts was not filed within the time limited by law, and (2) that the statement filed is insufficient.

The statement of facts was not filed within ninety days after the time of taking an appeal to this court, as required by Rule of Practice VII, found in 159 Wash. lxi, Rem. Rev. Stat., § 308-7 [P. C. § 8676-10]. It must therefore be stricken. *Tremblay v. Nichols,* 187 Wash. 109, 59 P. (2d) 1123. In passing, it may be said that the statement of facts does not include any evidence whatever, but consists simply of legal argument and colloquy between court ,and counsel.

However, while there is no statement of facts properly before us, it does not follow, in this instance, that the appeal must be dismissed. The cause was submitted to the trial court solely upon the departmental record, as appears by a recital in the court's

findings. The departmental record was duly filed in the superior court and thus became a part of the record therein. It was subsequently brought to this court as a part of the transcript on appeal. Since it affirmatively appears from the record that we have before us all the evidence upon which the court functioned, no statement of facts is necessary. *Hunter v. Department of Labor & Industries,* 190 Wash. 380, 68 P. (2d) 224. The motion to dismiss and affirm is denied.

The principal question in the case is whether a workman employed by the Washington Emergency Relief Administration in the construction of a public building for one of the municipalities of the state, and injured in the course of such employment, is entitled to the benefits of the workmen's compensation act.

Respondent, a resident of Everson, Whatcom county, was, by trade, a carpenter and saw-filer, and at times had worked in the woods. In the latter part of 1934, he was unable to get steady employment and in consequence thereof registered with the Washington Emergency Relief Administration, hereinafter designated as the WERA, for unemployment or relief work, which then was being assigned to various applicants in rotation. Respondent was given an assignment of work which he completed. Later, when his turn for work came again, he was assigned as a carpenter in the construction of a city hall which the WERA was then erecting for the town of Everson.

It appears from the two claims filed by respondent that on January 3, 1935, while he was putting plyboard on the ceiling of the city hall, particles of plaster or concrete fell into his right eye; that, on account of the injury to the eye, its vision was seriously impaired; and that later, in February, a branch of a tree struck and lacerated the eye, necessitating its enucleation on March 20, 1935. The evidence discloses that the

second injury occurred sometime after respondent had left his employment with the WERA and while he was walking along a trail toward a canoe which he was then building for himself.

The WERA was created by Laws of 1933, chapter 8, p. 103, Rem. Rev. Stat. (Sup.), § 9992-1 [P. C. § 4418-41] *et seq.,* which is entitled:

"An Act to relieve the people of the state from hardships and suffering caused by unemployment; creating and defining the duties of an emergency relief administration, and making an appropriation for such purpose; providing penalties, and declaring that this act shall take effect immediately."

Section 1, p. 103, Rem. Rev. Stat. (Sup.), § 9992-1 [P. C. § 4418-41], of the act recites that the public health, peace and safety of the state and of each county, city and town therein are imperiled by the existing and threatened deprivation of a considerable number of their respective inhabitants of the necessaries of life, owing to the economic depression; that such condition is a matter of public concern, state and local, and that the correction thereof is a state, county, city and town purpose, the consummation of which requires, as a necessary incident, the furnishing of public aid to individuals; and that, in the existing emergency, the relief and assistance provided for by the act are vitally necessary to supplement local relief work and to encourage and stimulate local effort in the same direction.

Section 2 of the act, p. 104, Rem. Rev. Stat. (Sup.), § 9992-2 [P. C. § 4418-42], defines two types of relief to be afforded: (1) "Work relief," meaning wages paid by municipal corporations to persons who are unemployed or whose employment is inadequate to provide the necessaries of life, from moneys specifically appropriated or contributed for that purpose during

the emergency period, for the performance of services or labor connected with work undertaken by such corporation independently of work under a contract or for which an annual appropriation has been made; and (2) "Home relief," meaning shelter, fuel, food, clothing, water, light, necessary household supplies, medical supplies and medical attendance.

Section 3, p. 105, Rem. Rev. Stat. (Sup.), § 9992-3 [P. C. § 4418-43], vests the administration of such emergency relief in a state agency known as the emergency relief administration, referred to herein as the WERA, headed by a commission of five persons appointed by the governor of the state. .

Section 6, p. 108, Rem. Rev. Stat. (Sup.), § 9992-6 [P. C. § 4418-46], creates within each county a county welfare board, which shall be responsible for the administration and supervision of work and home relief within the county. By § 7, p. 109, Rem. Rev. Stat. (Sup.), § 9992-7 [P. C. § 4418-47], the county board is, in all matters, made subject to the supervision, direction and control of the WERA.

Section 8, p. 110, Rem. Rev. Stat. (Sup.), § 9992-8 [P. C. § 4418-48], provides that the WERA may make grants in aid to a county or city or to a county welfare board for the prosecution of relief work; further, that the WERA shall require, in support of applications for grants in aid, such plans, estimates and other information as it may deem advisable to be submitted, and may specify the terms and conditions in connection therewith.

Section 11, p. 111, Rem. Rev. Stat. (Sup.), § 9992-11 [P. C. § 4418-51], makes it the duty of the county welfare board, among other things, to ascertain the extent of unemployment existing in the county, make investigations and surveys as to the need for public works not required to be let by contract, and deter-

mine, from time to time, whether the employment constitutes work relief, how the available employment shall best and most equitably be apportioned among the needy unemployed, how long they shall be employed, and how much compensation they shall receive.

Under this act, the WERA engaged in various types of projects, including the construction of schools and other public buildings, the construction and maintenance of public highways, and the construction of sewers, bridges, etc. The projects were carried on in several ways, one of which was by making grants in aid to the political subdivisions which carried on their own operations independently of the WERA; another was by direct operation of the WERA itself after the municipality had initiated or sponsored the project, that is to say, the WERA did all the engineering, supervision and work of construction, employed the workmen, using relief labor when available, and paid them with its checks from funds received partly from the Federal emergency relief administration and partly from the ten million dollar bond issue authorized by the state legislature under chapter 65, Laws of 1933, p. 336, Rem. Rev. Stat. (Sup.), § 9992-35 [P. C. § 4418-75] *et seq.*

The Everson city hall project was carried forward according to the second of the above methods, that is, it was constructed by, and under the direction of, the WERA. The town of Everson itself was not engaged in building the city hall, either through a grant in aid or otherwise, nor did it employ respondent, directly or indirectly. The WERA, acting as a purely relief agency of the state, constructed the building with labor employed and paid for immediately by it. The mere fact that the municipality ultimately received the benefit of the construction is immaterial to the

issues here. *Brooks v. Seattle,* 193 Wash. 253, 74 P. (2d) 1008.

On the other hand, the state, in so far as its activities were involved, was concerned solely and engaged primarily in providing and allocating relief to the needy unemployed during an existing emergency when the public health, peace and safety of the state and its municipal subdivisions were imperiled. The public work undertaken by the state thereunder was simply a method or avenue through which relief funds were expended by the state in accordance with the provisions of chapter 8, Laws of 1933, p. 103. The work of construction was in no sense an improvement needed or used by the state itself, nor was the state engaged in extrahazardous employment within the purview of the workmen's compensation act.

The intent and provisions of the workmen's compensation act are radically different from those of the emergency relief act. The former act deals directly with compensation for injuries arising out of extrahazardous occupations and relates to the state's industries; the latter act simply provides a method for emergency relief and relates particularly to the state's power to deal with such conditions.

This case is very similar to, and, in principle, is controlled by, the case of *Lawe v. Department of Labor & Industries,* 189 Wash. 650, 66 P. (2d) 848, in which it was held that a workman employed by the county welfare board of King county in painting the interior of a building occupied as a workroom or shop by the board in the prosecution of its relief work was not covered by the provisions of the workmen's compensation act.

The respondent in that case contended, as does the respondent here, that the workman's claim fell within the protection of the industrial insurance act because

of Rem. Rev. Stat., § 7692 [P. C. § 3485], which provides:

"Whenever the state, county, any municipal corporation or other taxing district shall engage in any extrahazardous work, or let a contract therefor, in which workmen are employed for wages, this act shall be applicable thereto. . . ."

In answer to that contention, we said:

"This statute (§ 7692) rather clearly indicates by its terms that what the legislature had in mind was work done by the state, or its subdivisions, which would be comparable to like extrahazardous work done by private employers. . . .

"In the *Garney* and *Fitzgerald* cases, *supra,* as we have said, there were involved only workmen employed to do the regular and necessary highway work which the county (the employer) was bound to perform. Here, we have no employer who was bound to perform any work of any character; but, on the contrary, we have the sovereign state acting through a special executive agency in conjunction with the Federal government engaged in distributing relief to its distressed citizens, and nothing more. If, as an incident to that distribution of relief, work was provided to assist in maintaining the self-respect of those in need, that did not change the character of the undertaking in any degree. . . .

"Considering then, as we must, the intent and purpose of the industrial insurance law, which is to compel industries, as a part of the cost of production, to bear the burdens growing out of the hazards of those employed, it seems manifest that the sovereign state has placed itself under the industrial insurance act by § 7692, *supra,* only when it engages in industry, and not at all when it engages solely in distributing relief to its distressed citizens."

Although in the *Lawe* case the majority members of this court did not all subscribe to the main opinion, it is apparent, from the language of the opinion concurring in the result, that, upon the particular facts

therein, which are analogous to those here, there was a clear majority.

In the recent case of *Brooks v. Seattle*, 193 Wash. 253, 74 P. (2d) 1008, cited above, this court recognized the fact and stressed the view that the execution of public work by a governmental relief agency for the relief of unemployment is assumed in virtue of the obligation of the government to its citizens and of its power to further the general welfare. Such work is usually of a peculiar and extraordinary nature and is undertaken primarily for the relief of unemployment and only incidentally for the utility and convenience of the general public.

The following recent cases from other jurisdictions support our conclusion: *Hoover v. Independent School Dist.*, 220 Iowa 1364, 264 N. W. 611; *Ford v. Independent School Dist.*, 273 N. W. (Iowa) 870; *Lawrence v. Detroit*, 277 Mich. 73, 268 N. W. 816; *Dabelstein v. Omaha*, 132 Neb. 710, 273 N. W. 43; *City Council of Augusta v. Edwards*, 55 Ga. App. 657, 191 S. E. 149; *Shelton v. Greeneville*, 169 Tenn. 366, 87 S. W. (2d) 1016. In each of those cases, it was held that the workman, who was employed by a Federal employment administration or by a state emergency relief administration, could not recover from a municipality for injuries sustained while performing certain public work from which the municipality received special benefit.

Respondent relies largely upon the case of *Garney v. Department of Labor & Industries*, 180 Wash. 645, 41 P. (2d) 400, to which may be added the cases of *Benson v. Department of Labor & Industries*, 180 Wash. 655, 41 P. (2d) 404; *Polk v. Department of Labor & Industries*, 180 Wash. 697, 41 P. (2d) 405; and *Fitzgerald v. Department of Labor & Industries*, 181 Wash. 325, 42 P. (2d) 805. All of those cases, however, differ

from this case in a very vital respect, as was pointed out in the *Lawe* case, *supra*. In those cases, the workman was employed by the county to do work which the county was authorized and required to perform. The incidental fact that the injured workman was paid out of county funds, earmarked for relief, did not change his status as a county employee engaged in county work. In this case, however, we have no employer who was bound to construct the city hall. We have simply the sovereign state acting through a special administrative agency in connection with a similar agency of the Federal government in distributing relief to distressed citizens. The element necessary to bring the respondent within the provisions of the workmen's compensation act, namely, the relation of employer and employee engaged in extrahazardous occupation, is lacking, and such provisions, therefore, do not apply.

The judgment is reversed, with direction to the trial court to dismiss the action.

MILLARD, GERAGHTY, BEALS, ROBINSON, and SIMPSON, JJ., concur.

MAIN, J. (dissenting)—As I understand the holding in the case of *Lawe v. Department of Labor & Industries*, 189 Wash. 650, 66 P. (2d) 848, it is not authority for the position that employees of the Washington Emergency Relief Administration are not included within the workmen's compensation act. That case was heard by the nine members of the court. The majority opinion is supported by four members. Two members of the court signed a special concurring opinion, but did not adopt the holding of the majority opinion in its entire breadth and scope. Three members dissented. As I view it, the result is that the question of whether employees of the Washington Emergency

Relief Administration are within the workmen's compensation act is still an open one.

Rem. Rev. Stat., § 7692 [P. C. § 3485], provides:

"Whenever the state . . . shall engage in any extrahazardous work, or let a contract therefor, in which workmen are employed for wages, this act shall be applicable thereto. . . ."

From the facts stated in the majority opinion, it seems clear that the state, through an agency of its own creation (the Washington Emergency Relief Administration), was engaged in extrahazardous work, as defined by the act; that workmen were employed for wages; that the respondent was such a workman and, while engaged as such, sustained an injury. As I view it, there is no more reason for denying the respondent compensation than there would be if he had sustained his injuries in the course of extrahazardous employment in any other extrahazardous work.

For the reasons stated, I am unable to concur in the majority opinion and, therefore, dissent.

HOLCOMB and BLAKE, JJ., concur with MAIN, J.